# SUPPLEMENT.

---

OPINION OF THE JUSTICES TO THE GOVERNOR AND COUNCIL.

A woman, married or unmarried, cannot lawfully be appointed a notary public, or, if duly appointed and qualified, legally perform any acts pertaining to the office.

·THE following order was adopted by the Governor and Council on March 5, 1890, and thereupon transmitted to the Justices of the Supreme Judicial Court, who, on March 18, 1890, returned the opinion which is subjoined.

Ordered, That the opinion of the Supreme Judicial Court be requested on the following question :

Under the Constitution and laws of this Commonwealth, can a woman, married or unmarried, if duly appointed and qualified as a notary public, legally perform all acts pertaining to such office ?

To his Excellency the Governor and the Honorable Council of the Commonwealth of Massachusetts :

The undersigned, Justices of the Supreme Judicial Court, have considered the question upon which our opinion was required on the fifth day of the present month, and respectfully submit the following opinion.

The question is as follows : " Under the Constitution and laws of this Commonwealth, can a woman, married or unmarried, if duly appointed and qualified as a notary public, legally perform all acts pertaining to such office ? "

The acts which now pertain to the office of notary public in Massachusetts are, in part, acts which notaries public are authorized by statute to perform, and, in part, acts which from very early times they have been accustomed to perform. The office is of ancient origin, and for many centuries has been known

to most, if not all, Christian nations. In countries the foundation of whose jurisprudence is the Roman law, the duties of a notary public are often of great variety and importance. In countries where the common law of England prevails, the duties of the office are more limited. In its international relations the office is perhaps everywhere of less consequence now than formerly. A notary public, being an officer found in all or nearly all parts of Christendom, was formerly of great use to merchants, shipmasters, and other persons, in attesting writings and in certifying to acts done by him or in his presence, proof of which might be required in distant places or in foreign countries. Modern nations and states define by statute many of the acts which may be done by both foreign notaries and notaries of their own appointment, and the effect of these acts and the uses which may be made of notarial certificates within their respective jurisdictions.

In England notaries public were appointed by the authority of the Pope of Rome until the Statute of 25 Hen. VIII. c. 21, and since the passage of this statute they have been appointed by the Court of Faculties of the Archbishop of Canterbury. Under the Charter of the Colony of Massachusetts Bay a notary public was elected by the General Court, and that Court prescribed the oath to be taken by him, and some of his duties, and established his fees and the form of his seal, which was engraved at the expense of the Colony, and he was made exempt from militia service.*

Notaries public were not mentioned in the Province Charter, but it appears that until the year 1720 they were appointed by the Governor and Council, in the same manner as judicial officers. In that year the House of Representatives contended that notaries public should be elected by the General Court, pursuant to the clause in the Charter which granted power to that Court " to name and settle annually all civil officers,"† except those otherwise provided for in the Charter, subject to the approbation of the Governor, and this claim was conceded, and afterwards

---

* Colonial Laws, (Whitmore's ed., 1887,) 109, 125, 158, 165, 313. 2 Mass. Col. Rec. 86, 209. 3 Mass. Col. Rec. 119, 210, 239. 4 Mass. Col. Rec., Pt. I. 28, 57, 118. 5 Mass. Col. Rec. 438.

† Anc. Chart. 33.

notaries public were elected by the Council and House of Representatives in concurrence.*

The fees of notaries public were established by statute, but it does not appear that any Provincial statute was passed which defined any of their duties. Apparently the only duties which they performed under the Province Charter were those which by custom were attached to the office.

The Constitution of the Commonwealth as originally adopted provided that "The Secretary, Treasurer and Receiver General, and the Commissary General, notaries public, and naval officers shall be chosen annually by joint ballot of the Senators and Representatives in one room." †

By the Fourth Amendment to the Constitution adopted on April 9, 1821, it was provided that "Notaries public shall be appointed by the Governor in the same manner as judicial officers are appointed, and shall hold their offices during seven years, unless sooner removed by the Governor with the consent of the Council, upon the address of both Houses of the Legislature."

The principal acts which are now recognized in this Commonwealth as pertaining to the office of notary public, independently of the provisions of statute, are the presentment and protest of foreign bills of exchange, and the noting and extending of marine protests. In some courts of admiralty, it may be that whenever the law of the place, whether customary or statutory, requires or authorizes an act to be done by or before a notary public, and requires that he officially make and keep a record of it, a copy of the record certified under his hand and seal is admissible as evidence that the act certified to was done. But courts of common law to only a limited extent take judicial cognizance of the seals of notaries public, and admit notarial certificates as evidence.

In this Commonwealth by statute notaries public are authorized within the Commonwealth to take the acknowledgment of deeds; to protest any bill of exchange, promissory note, or order for the payment of money; to administer oaths whenever a justice of the peace could administer them; and to take the affi-

---

* 1 Province Laws, (State ed.) 731, note.
† Const. Mass., Part II. Chap. II. Sect. IV. Art. I.

davit of officers of savings banks and institutions for savings to copies of their records, books, and accounts to be used as evidence. Notaries public may, within and without the Commonwealth, take the proof of claims in insolvency. Foreign notaries public may, within their jurisdictions, take depositions to be used within the Commonwealth, and the acknowledgments of deeds of land situated within the Commonwealth; may serve notice upon non-resident owners of dangerous buildings situated within the Commonwealth, may administer oaths and take affidavits to be used within the Commonwealth; and may take acknowledgments of the certificates of limited partnerships established within the Commonwealth. It is plain from this enumeration, that none of the acts which a notary public in this Commonwealth is authorized either by custom or by statute to perform is a judicial act. He cannot hold pleas either civil or criminal. At the same time, the office is a public office, the duties of which must be performed by the notary personally, and cannot be performed by deputy, and a record must be kept of some, at least, of his official acts. His records and official papers are regarded as public records, and are required by statute to be deposited with the Clerk of the Courts when the notary dies, resigns, or is removed from office. By custom, if not by positive law, everywhere, so far as we know, a notary public must have an official seal, and copies of his records must be certified under his seal.

After such search as we have been able to make, we do not find that a woman has ever held the office of notary public in Massachusetts. We are not aware that a woman has ever been appointed to this office in England. It is impossible, in the time which we can give to the subject, to ascertain the practice in this respect of other foreign countries, but we know of no instance of the appointment of a woman to the office of notary public in any foreign country. Although the office is named in the Constitution, and the manner of appointment provided for, the qualifications required of notaries public are nowhere prescribed by the Constitution. Notaries public are to be appointed in the same manner as judicial officers are appointed, but they are not judicial officers. There is no statute prescribing the qualifications which persons must have in order to be

appointed notaries public. With two or three exceptions, the duties which are imposed upon notaries public by statute are duties which in this Commonwealth can be performed by justices of the peace. Until the passage of the St. of 1883, c. 252, the appointment of a woman to perform any of these duties was not expressly authorized by statute. By that statute, women who are attorneys at law may be appointed by the Governor, with the advice and consent of the Council, special commissioners to administer oaths, to take depositions, and to take the acknowledgments of deeds. By the St. of 1889, c. 197, these special commissioners may administer all oaths which may be administered by a justice of the peace, may take depositions and affidavits, and the acknowledgments of deeds and other instruments, and may issue " summonses for witnesses." Most of the acts mentioned in these statutes, although not all, can be performed in this Commonwealth by notaries public. These statutes seem to indicate that it was not the intention of the Legislature that any woman might be appointed to perform the acts mentioned, but only such as were attorneys at law. Women could not be admitted to practise as attorneys at law until the passage of the St. of 1882, c. 139.*  The appointment of women to be notaries public would tend to render the restrictions contained in these statutes to a certain extent unavailing. It cannot be said that any of the statutes show affirmatively any intention on the part of the Legislature that women should be appointed notaries public.

In June, 1871, the Governor and Council requested the opinion of the Justices of this Court upon the following question: " Under the Constitution of this Commonwealth, can a woman, if duly appointed and qualified as a justice of the peace, legally perform all acts pertaining to such office ? " †  At that time justices of the peace had not been prohibited from trying civil cases, and they were strictly judicial officers, although not all their duties were judicial.‡  Neither the Constitution nor the statutes prescribed the qualifications required of justices of the peace. In the opinion given, the question was not considered

---

* Robinson's case, 131 Mass. 376.          ‡ See St. 1877, c. 211.

† Opinion of the Justices, 107 Mass. 604.

whether the Legislature could under the Constitution by statute prescribe the qualifications of persons to be appointed justices of the peace, or authorize the appointment of a woman to that office. That was a question which concerned the powers of the legislative department of the government. The question was answered in the negative, for the reasons that at the time of the adoption of the Constitution "the universal understanding" was that a woman could not be appointed to a judicial office, and that this had been the "unbroken practical construction" of the Constitution "for the greater part of a century." The court in *Robinson's case* construed the statutes then in force regulating the admission to practise of attorneys at law, and the reasons given for the opinion are that the statutes, interpreted in the light of immemorial usage, did not show it to be the intention of the Legislature that women should be admitted to practise as attorneys at law. In the opinion given by the Justices of this Court, that there is nothing in the Constitution which prevents a woman from being a member of a school committee, the reasons stated are that the Constitution contained nothing relating to school committees; that the office was one created and regulated by statute, and was a local office of an administrative character, which the common law of England permitted a woman to fill.* The opinion given upon the authority of the Governor and Council to appoint a woman to be a member of the State Board of Health, Lunacy, and Charity rests upon the construction of the statute which created the board, interpreted with reference to other statutes upon similar subjects, and to the nature of the office.†

In answering the question now before us, we do not deem it necessary or proper to consider whether it is competent for the Legislature by statute to authorize the Governor, by and with the advice and consent of the Council, to appoint women notaries public. No such statute has been passed. In the absence of any statute authorizing the appointment of women to be notaries public, we are of opinion that the clause of the Constitution which provides for the appointment of notaries public, inter-

---

* Opinion of the Justices, 115 Mass. 602.
† Opinion of the Justices, 136 Mass. 578.

preted with reference to the history and nature of the office and the long continued and constant practice of the government here and the usage elsewhere, cannot be considered as authorizing the Governor, by and with the advice and consent of the Council, to appoint women to be notaries public, and that the question asked must be answered in the negative.

The Chief Justice has been prevented by illness from taking part in the consideration of the question.

WALBRIDGE A. FIELD.
CHARLES DEVENS.
WILLIAM ALLEN.
CHARLES ALLEN.
OLIVER WENDELL HOLMES, JR.
MARCUS P. KNOWLTON.

Boston, March 18, 1890.

