# SUPPLEMENT.

## OPINION OF THE JUSTICES TO THE SENATE.

The Justices of the Supreme Judicial Court, in answering questions propounded to them by the Senate relating to a proposed act "further to define the eligibility of women for public office," observed that the proposed act did not purport to deal with the military service of the Commonwealth, and stated that therefore they had not considered the question whether women are subject and eligible to hold office in that department of government under the Constitution.

The adoption of art. 19 of the Amendments to the Federal Constitution has so far affected the status of women as to render it constitutionally competent for the General Court to enact legislation declaring women eligible to hold any civil public office, elective or appointive, within the Commonwealth.

The adoption of art. 19 of the Amendments to the Federal Constitution had the effect of rendering women eligible to hold a civil office from which they previously were excluded by the Constitution of the Commonwealth.

Women now are not excluded by the Constitution of the Commonwealth from any elective or appointive civil office.

THE following order was passed by the Senate on February 16, 1922, and was transmitted to the Justices of the Supreme Judicial Court on February 27, 1922.

WHEREAS, The Governor of the Commonwealth has recommended to the General Court that the opinions of the Justices of the Supreme Judicial Court be obtained as to "whether the spirit and meaning of the Nineteenth Amendment to the Federal Constitution has not given to women the right to hold all offices under the Constitution of Massachusetts," and

WHEREAS, There is pending before the General Court a bill entitled "An Act further to define the eligibility of women for public office," presented as Senate Bill No. 58, a copy of which is hereto annexed, and which provides, *inter alia*, that women shall be eligible for election or appointment to all elective offices, to all judicial offices within the Commonwealth and to all offices to be filled by all the voters of the Commonwealth or of any political subdivision thereof, and

WHEREAS, Doubt exists as to the constitutionality of such a. bill if enacted into law, therefore be it

ORDERED, That the General Court require the opinions of the Justices of the Supreme Judicial Court on the following important. questions of law: —

(1) Has the adoption of the Nineteenth Amendment to the Federal Constitution conferring the suffrage upon women so far affected the status of women as to render it constitutionally competent for the General Court to enact legislation declaring women eligible to hold any public office, elective or appointive,. within the Commonwealth?

(2) Has the adoption of said Nineteenth Amendment had the effect of rendering women eligible to hold an office from which they were previously excluded by the Constitution of the Commonwealth?

(3) From what, if any, elective or appointive offices in the Commonwealth are women excluded by the Constitution of the Commonwealth?

(4) Is it necessary to amend the Constitution, National or State, or to enact legislation, in order to render women eligible for election as Senators and Representatives in Congress?

The bill, a copy of which accompanied the order, was as follows:

An Act further to define the eligibility of women for public office.

WHEREAS, The deferred operation of this act would cause great inconvenience in determining the rights of women at the primaries and elections for the year nineteen hundred and twenty-two; therefore it is hereby declared to be an emergency law necessary for the immediate preservation of public convenience.

Be it enacted by the Senate and House of Representatives in General Court assembled, and by the authority of the same, as follows:

SECTION 1.    Women shall be eligible to election or appointment to all elective offices and all judicial offices within the Commonwealth and to all other public executive or administrative offices, public commissions and public organizations, agencies, positions and employments.

SECTION 2.    Section seven (a) of chapter thirty of the General Laws as amended by section three of chapter four hundred and

forty-nine of the acts of nineteen hundred and twenty-one is hereby further amended by striking out said section and substituting therefor the following: Section 7 (a) Women shall be eligible to appointment to all state executive or administrative offices, all state commissions and all other state organizations, agencies, positions and employments.

SECTION 3. Section three (a) of chapter thirty-four of the General Laws as amended by section four of chapter four hundred and forty-nine of the acts of nineteen hundred and twenty-one is hereby further amended by striking out said section and substituting therefor the following: Section 3 (a) Women shall be eligible to election or appointment to all county elective offices, all county executive or administrative offices, county commissions and all other county organizations, agencies, positions and employments.

SECTION 4. Chapter thirty-nine of the General Laws is hereby amended by inserting after section two the following new section: Section 2 (a). Women shall be eligible to election or appointment to all city elective offices, all city executive or administrative offices, city commissions and all other city organizations, agencies, positions and employments; and this section shall include within its scope cities which now hold charters under general or special law, and shall become effective by way of amendment of all existing charters.

SECTION 5. Chapter thirty-nine of the General Laws is hereby further amended by inserting after section thirteen the following new section: Section 13 (a). Women shall be eligible to election or appointment to all town elective offices, all town executive or administrative offices, town commissions and all other town organizations, agencies, positions and employments.

SECTION 6. Chapter fifty-three of the General Laws is hereby amended by inserting after section ten the following new section: Section 10 (a). Women shall be eligible to nomination and election for all offices to be filled by all the voters of the Commonwealth or of any political subdivision or district thereof.

SECTION 7. This act shall take effect upon its passage.

On April 13, 1922, the Justices returned the following answers:

To the Honorable the Senate and the House of Representatives of the Commonwealth of Massachusetts:

The Justices of the Supreme Judicial Court respectfully submit these answers to the questions set forth in the order of February 16, 1922.

The questions are considered strictly with reference to the pending bill, copy of which accompanies the order.

Prior to the adoption of the Nineteenth Amendment to the Constitution of the United States women were not voters and could not be made by the General Court voters at State elections or for State officers. Theretofore by the Constitution of this Commonwealth every male citizen of twenty-one years of age and upwards, except paupers and persons under guardianship and persons temporarily or permanently disqualified by law because of corrupt practices in respect to elections, who had resided within the Commonwealth one year and within the town or district in which he claimed a right to vote six calendar months next preceding any election, except that in cases of change of residence within the Commonwealth the right to vote in the place of former residence continued for a period of six calendar months, and who was able to read the Constitution in the English language and write his name unless prevented by physical disability or unless entitled to vote on May 1, 1857, had a right to vote, and no other person was entitled to vote. See Const. Mass. c. 1, § 2, art. 2; c. 1, § 3, art. 4 and arts. 3, 17, 20, 28, 30, 31, 32 and 40 of the Amendments to that Constitution. *Opinion of the Justices*, 226 Mass. 607.

Prior to the adoption of the Nineteenth Amendment to the Federal Constitution women were not eligible for election or appointment to any office established by the Constitution. That is clear from several opinions of the Justices.

In 1871 the Governor and Council requested an opinion on the question whether a woman could legally be appointed as a justice of the peace, an office recognized by the Constitution. In reply to that question it was said in an opinion by the Justices in 107 Mass. 604, 605: "By the Constitution of the Commonwealth, the office of justice of the peace is a judicial office, and must be exercised by the officer in person, and a woman, whether married or unmarried, cannot be appointed to such an office. The law of Massachusetts at the time of the adoption of the Constitution, the whole frame and purport of the instrument itself, and the

universal understanding and unbroken practical construction for the greater part of a century afterwards, all support this conclusion, and are inconsistent with any other. It follows that, if a woman should be formally appointed and commissioned as a justice of the peace, she would have no constitutional or legal authority to exercise any of the functions appertaining to that office." That principle was affirmed and amplified in *Opinion of the Justices,* 150 Mass. 586. See *Minor* v. *Happersett,* 21 Wall. 162. In *Opinion of the Justices,* 165 Mass. 599, 602, it was said: "There is nothing in the Constitution which in terms prohibits women from being appointed to judicial offices, any more than from being appointed to military offices or to executive civil offices, the tenure and mode of appointment of which are provided for in the Constitution. It was the nature of the office of justice of the peace, and the usage that always had prevailed in making appointments to that office, that led the Justices to advise that it could not have been the intention of the Constitution that women should be appointed justices of the peace. 107 Mass. 604." The reasoning of these opinions applied to all elective or appointive officers named or described in the Constitution.

The power of the General Court to determine the selection and qualification of civil officers not otherwise ordained by the Constitution was confined to enactments to the effect that women might be eligible to certain administrative or executive offices not named or described in the Constitution. *Opinions of the Justices,* 115 Mass. 602; 136 Mass. 578. *Robinson's Case,* 131 Mass. 376.

The Nineteenth Amendment was validly adopted and has become a part of the Constitution of the United States. That amendment is binding upon the people and the several departments of government of this Commonwealth. *Leser* v. *Garnett,* 258 U. S. 130, decided February 27, 1922. That amendment declares that "The right of citizens of the United States to vote shall not be denied or abridged by the United States or by any state on account of sex." It makes no provision concerning the right to hold office. By its own force it struck from the Constitution of this Commonwealth the word "male" wherever it occurred as a limitation upon the right of the citizen to vote. *Opinion of the Justices,* 237 Mass. 591. This is the extent of its operation. It contains no declaration concerning the right to hold office. That

amendment, like all other provisions of the Constitution of the United States, is complete in itself. It is supreme within its sphere. The Federal Government possesses all incidental powers necessary to execute it. But under our dual system of government no implications extend the powers of the United States beyond those granted. "The powers not delegated to the United States by the constitution, nor prohibited by it to the states, are reserved to the states respectively, or to the people." Article 10 of the Amendments to the United States Constitution. *Hodges* v. *United States,* 203 U. S. 1, 16. The power to fix the qualifications of those who shall hold State as distinguished from Federal office, is to be determined by the several States according to their differing needs and varying views of internal policy, subject to any controlling provisions of the Federal Constitution.

The right to hold office is not necessarily co-extensive with the right to vote. That is recognized by the Constitution of the United States. The President of the United States must be a natural born citizen of the United States, at least thirty-five years of age, and fourteen years a resident within the United States. Art. 2, § 1. A senator must have attained the age of thirty years, been nine years a citizen of the United States, and be a citizen of the State from which he is chosen. Art. 1, § 3. A representative to the Congress must be twenty-five years old, seven years a citizen of the United States, and an inhabitant of the State from which he is elected. Art. 1, § 2. These qualifications are in addition to those of voters for these offices. Const. U. S. art. 1, § 2; art. 2, § 1. Art. 17 of the Amendments.

There are several provisions in the Constitution of Massachusetts and its amendments which illustrate the principle that eligibility to office is not an incident of the right to vote. By c. 1, § 2, art. 5, no person was capable of being elected a senator or councillor who was not seised in his own right of a freehold within the Commonwealth of the value of three hundred pounds at least or possessed of personal estate to the value of six hundred pounds or of both to the amount of the same sum, and who had not been an inhabitant of this Commonwealth for the space of five years immediately preceding his election and who was not at the time of his election an inhabitant of the district for which he was chosen. By c. 1, § 3, art. 3, every member of the House of Representatives

was required to be for at least one year preceding his election an inhabitant of and seised in his own right of a freehold of the value of one hundred pounds within the town he shall be chosen to represent or any ratable estate to the value of two hundred pounds. By c. 2, § 1, art. 2, no person was eligible to the office of Governor unless at the time of his election he had been an inhabitant of the Commonwealth for seven years next preceding and unless seised in his own right of a freehold within the Commonwealth of the value of one thousand pounds and unless he declared himself to be of the Christian religion. The same conditions as to the eligibility of persons for lieutenant-governor were imposed by c. 2, § 2, art. 1. By c. 1, § 2, art. 2, c. 1, § 3, art. 4 and c. 2, § 1, art. 2, electors for councillors, senators and members of the House of Representatives and for the Governor were required to have a freehold estate of the annual income of three pounds or any estate of the value of sixty pounds, with the qualifications as to residence therein stated. All property and religious qualifications for holding office have been abolished from time to time, the last in 1892 by art. 34 of the Amendments to the Constitution. Property qualifications for voters also have been removed. The Governor must now have been an inhabitant of the Commonwealth for seven years,* councillors,† the secretary, treasurer and receiver general, auditor and attorney general‡ for five years respectively, senators for five years and also inhabitants of the districts for which chosen,|| and representatives for one year inhabitants of the district for which chosen.§ As has already been pointed out, the qualifications for the voter as to length of residence are less stringent. The use of the words "the right to vote, or be eligible to office" in art. 20 of the amendments and the words "shall be entitled to vote, or shall be eligible to office" in arts. 23 and 26 of the Amendments, show that the eligibility to office is not necessarily coterminous with the right to vote.

Thus it is apparent that the question whether one has a right to hold office under the Constitution is separate and distinct from the question whether one has a right to vote.

---

* c. 2, § 1, Art. 2.                    † Art. 16 of Amendments.

‡ Art. 17 of Amendments.              || Art. 22 of Amendments.

§ Art. 21 of Amendments.

That however is not decisive of the questions to be answered. Other clauses of the Constitution must be considered wherein the remaining qualifications of electors and those eligible for election are set forth in identical terms. There are provisions of the Constitution concerning eligibility to office aside from those to which allusion already has been made. In art. 9 of the Declaration of Rights it is declared that "all the inhabitants of this commonwealth, having such qualifications as they shall establish by their frame of government, have an equal right to elect officers and to be elected, for public employments." In c. 1, § 2, art. 2, occur these words: "And to remove all doubts concerning the meaning of the word 'inhabitant' in this constitution, every person shall be considered as an inhabitant, for the purpose of electing and being elected into any office, or place within this state, in that town, district, or plantation where he dwelleth, or hath his home." The words "inhabitants" and "inhabitant" as thus used mean "citizens" and "citizen." All others who are not citizens are excluded from the scope of the meaning of those words. The words "inhabitants" and "inhabitant" have this meaning wherever used in the Constitution to describe the right to vote or to be elected to office. *Opinions of the Justices*, 7 Mass. 523; 122 Mass. 594. Nowhere is the word "male" found in the Constitution as qualifying the right to hold office. The only places where the word "male" occurs in the Constitution are in c. 1, § 2, art. 2, c. 1, § 3, art. 4, and art. 3 of the Amendments. In each of these places it is used to restrict the right of voting to "male" citizens. The word "male" in all these connections has been stricken from the Constitution by the force of the Nineteenth Amendment to the Federal Constitution. Therefore there is now left in the Constitution no limitation of sex upon the right to vote.

From the express provision that none except "male inhabitants" or "male citizens" possessed the right to vote under the Constitution as well as from unbroken usage, arose the implication that men alone were eligible for election or appointment to offices created or recognized by the Constitution. The emphasis in the opinions of the justices in 107 Mass. 604 and 165 Mass. 599 was placed upon unbroken usage. Now that the word "male" as a limitation upon the right to vote has been eliminated from the Constitution of Massachusetts and the suffrage is thrown open to

all citizens, all express limitation upon eligibility for office founded upon sex created or recognized by the Constitution disappears. The unbroken usage of the common law has been changed by the fundamental law of the Constitution. Earlier than the adoption of the Nineteenth Amendment to the United States Constitution, women had become by legislation and usage under the sanctions of the Massachusetts Constitution, arising from the absence of express limitations, eligible to hold numerous offices not created or recognized by the Constitution. If there were express prohibition in the Constitution against the eligibility of women for office, a quite different question would arise. There is no express prohibition. The main support for such ineligibility by implication is gone when the word "male" as a limitation upon the right to vote is effaced from the Constitution. When the fundamental law is silent as to the qualifications for office, it commonly is understood that electors and electors alone are eligible. Cooley, Cons. Law (3rd ed.) 285. *State* v. *Smith*, 14 Wis. 497. *Attorney General* v. *Abbott*, 121 Mich. 540. *State* v. *Van Beek*, 87 Iowa, 569, 577. Except in the particulars already pointed out wherein definite qualifications are established as conditions of eligibility for office, there has been, under the Massachusetts Constitution and under Massachusetts custom equality among qualified voters as to eligibility for such offices as are recognized or created by the Constitution.

The Constitution of Massachusetts was designed to be an enduring frame of government so comprehensive and general in its terms that a free, intelligent and moral body of citizens might govern themselves under its beneficent provisions notwithstanding radical changes in social, economic and political conditions. It declares chiefly fundamental principles concerning the rights and obligations of individuals, the powers of society, the form of government and the mode in which it shall be administered. The original instrument and all amendments affecting its provisions constitute one constitution to be interpreted in the light of the conditions under which its several parts were framed, the benefits expected to be conferred and the evils hoped to be prevented or remedied. It is mostly a statement of principles and not a specification of details. Under a constitution framed and phrased as is the Constitution of Massachusetts, we think that an amendment

thereto adopted by the people of this Commonwealth, striking out the word "male" wherever it occurred as a limitation upon the right to vote, would plainly make women eligible to office upon the same footing as men. It seems to us that when the same effect is wrought by an amendment to the Constitution of the United States, the same result follows. The constitutional situation has become so changed by the supervention of the Nineteenth Amendment to the United States Constitution with its consequent operation upon the Constitution of Massachusetts as to render no longer of force the opinions of the justices in 107 Mass. 604 and 165 Mass. 599. The firm foundation upon which they rested has been swept away by that amendment.

This principle may not be universally applicable to amendments of the Federal Constitution in their effect upon the Constitution of Massachusetts. We go no further than the case in hand and the words of our Constitution here in issue.

It is not necessary to consider whether on other grounds the same conclusion might be required. See *Strauder* v. *West Virginia,* 100 U. S. 303; *Neal* v. *Delaware,* 103 U. S. 370.

This conclusion seems to follow from the reasoning of *Opinion of the Justices,* 237 Mass. 591, wherein the Honorable House of Representatives was advised that in view of the Nineteenth Amendment legislation might be enacted enabling women to serve as jurors. See *State* v. *James,* 96 N. J. L. 132; *People* v. *Patterson,* 214 Mich. 245; *Commonwealth* v. *Maxwell,* 271 Penn. St. 378; *In re Grilli,* 179 N. Y. Supp. 795, affirmed in 192 App. Div. (N. Y.) 885.

This conclusion is in accord with the result reached in *Opinion of the Justices,* 119 Maine, 603. See *Preston* v. *Roberts,* 183 N. C. 62; *State* v. *Quible,* 86 Neb. 417, and *Opinion of the Justices,* 62 Fla. 1.

The proposed act does not purport to deal with the military service of the Commonwealth. Therefore we have not considered the question whether women are subject and eligible to hold office in that department of government under the Constitution.

The first and second questions are answered in the affirmative.

To the third question the answer is that women are not excluded by the Constitution from any elective or appointive civil office.

The fourth question does not appear to be directed to any proposed act pending before the General Court or either branch

thereof. Under the established practice we are constrained to ask to be excused from answering a question not necessary for the solution of doubts as to matters awaiting legislative action. *Opinions of the Justices,* 148 Mass. 623, 626; 186 Mass. 603, 608; 217 Mass. 607 and citations at page 612; 226 Mass. 607, 612. *Commonwealth* v. *Smith,* 9 Mass. 531.

Mr. Justice Pierce not having participated in the deliberations of the Justices upon these questions does not join herein and asks to be excused.

> ARTHUR P. RUGG.
> HENRY K. BRALEY.
> CHARLES A. DE COURCY.
> JOHN C. CROSBY.
> JAMES B. CARROLL.
> CHARLES F. JENNEY.