Oct. 4,
1927.

OPINION OF THE JUSTICES.

*Jennie Blanche Newhall, pro se.*

The following answer was returned:

*To his Excellency the Governor and the Honorable Council:*
The undersigned, the justices of the supreme court, make the following answer to your inquiries, forwarded to us through the secretary of state.

I. Your first inquiry relates to the power to appoint women to the office of justice of the peace. The office is named in our constitution. Accompanying your inquiry is the suggestion that all constitutional limitations upon the capacity of women to hold office were abrogated by the nineteenth amendment to the constitution of the United States. Authorities from Massachusetts and other states are cited to sustain this position.

The suggestion that the conclusion reached by the justices of the supreme judicial court of Massachusetts (*Opinion of the Justices*, 240 Mass. 601) is an authority for the proposition that under their constitution women are now eligible to appointive offices, and that enabling legislation is unnecessary, is not well founded. That opinion is carefully limited to the matter there under consideration. It deals only with constitutional limitations as to certain offices, and with the power of the legislature to pass an enabling act.

The justices were of opinion that under the constitution of Massachusetts the limitation of the office-holding privilege to men was an implied one. This view rendered necessary a consideration by them of the effect of the federal amendment upon such implication. The earlier opinions in Massachusetts, upon which reliance is there placed, all deal with appointive offices. Those earlier opinions being put upon the ground that there was in their constitution a general implied inhibition against women holding public office, there had been no occasion to take up the question whether there might also be an express prohibition as to elective offices. And in the *Opinion of the Justices*, 240 Mass. 601, it is suggested that if the use of the word male in describing the qualification for voters were to be treated as also relating to the right to hold office, the elimination of that qualification for voters removed "all express limitation upon eligibility for office founded upon sex created or recognized by the Constitution." *Ib.*

As we understand the reasoning of that opinion, it concludes that the inference theretofore drawn, that there was an implied intent upon the part of the framers of their constitution to exclude women from public office, could not be drawn after the federal amendment conferred upon women the right of suffrage. But it seems to us that if there was such an original intent, it could not be reversed or altered by any subsequent event. The intent of the framers of the constitution, in the use of certain language, was a completed fact when the words were written. Subsequent change of that intent is plainly impossible. In our opinion a present right for women to hold office cannot be based upon the grounds mentioned.

The conclusion of the justices in Massachusetts (240 Mass. 601) is the same as that of a majority of the justices in Maine. *Opinion of the Justices*, 62 Me. 596. The view there adopted is that because by the common law women did not hold public office, therefore the framers of the constitution understood that office-holding was limited to men by that document, although no mention of the subject was made therein. But the minority of the Maine justices thought otherwise (*Ib.*), and their view was adopted by the court of Kansas, in an opinion written by Mr. Justice *Brewer*. *Wright* v. *Noell*, 16 Kan. 601.

Upon a later occasion, the justices of Maine seem to imply that they concur in the earlier minority view. *Opinion of the Justices*, 119 Me. 603. The statement that "there was neither sentence, clause nor word in the Constitution forbidding the passage of a legislative act authorizing the appointment of women as Justices of the Peace" is quoted with apparent approval, although the majority found other grounds upon which to reach the conclusion that women are now eligible to office in that state.

The authorities elsewhere appear to be unanimous in the opinion that there are now no constitutional limitations upon the eligibility of women to public office. The conclusion is not always based upon the same reasoning, and is of course reached with reference to the particular provisions of the constitution of the state where the question arose.

In addition to the removal of constitutional inhibitions, express or implied, it is the conclusion in most states that legislative action, abolishing the common-law rule of disability, is also required to enable women to hold office. Apparently, that view still obtains in Massachusetts, as the *Opinion of the Justices*, 240 Mass. 601, was given in response to a legislative inquiry as to the power to enact such legislation. Had the legislation been unnecessary, it seems probable that the justices would have so advised. See also *Opinion of the Justices*, 237 Mass. 591; *Opinion of the Justices*, 119 Me. 603; *State* v. *James*, 96 N. J. Law 132; *People* v. *Barltz*, 212 Mich. 580.

In order to reach a conclusion as to the particular matter inquired about it becomes necessary to examine the general subject of the provisions of our constitution as to office-holding capacity. The express provisions applicable to the matter under consideration are as follows:

". . . every inhabitant of the state, having the proper qualifications, has equal right to elect, and be elected, into office. . . ." Bill of Rights, *art.* 11.

"Every male inhabitant of each town, . . . shall have a right, . . . to vote in the town." Const., Pt. II, *art.* 28.

"Every person, qualified as the constitution provides, shall be considered an inhabitant for the purpose of electing and being elected into any office." *Ib., art.* 30.

The meaning of these provisions is entirely clear. The right of suffrage is made the general test of the right to hold elective office. The nineteenth amendment to the constitution of the United States having made women qualified voters upon equal terms with men, the suggestion is made that by force of this change they are now also qualified to hold office.

As opposed to this conclusion, it is argued (and rightly) that the federal amendment affects our constitution only so far as may be necessary to give full and substantial effect to the supreme law. It is also said that, as the provision as to office-holding refers to the then existing limitation of the suffrage right to limit the office-holding right, the latter right is not enlarged by a change of the former. It being provided that the qualifications prescribed in the constitution should be the test for office-holding capacity, it is argued that a federal amendment making those qualifications void as to the right to vote has no effect upon their validity as limitations upon the right to hold office. The argument is not without weight, but it is not conclusive of the present problem. The vital question is whether the provision as to office-holding was originally meant to be an independent one, or whether the idea sought to be expressed was that all voters should be eligible to elective offices. The latter is the true construction. The fundamental idea was and is that the rights of electing and being elected are equal, save for the specific constitutional limitations as to certain offices.

The federal amendment, relating to the right of suffrage only, did not change or impair the provisions of our constitution limiting the right to hold office. Those provisions remain what they were before. Those who have the right to vote also have the right to be elected to office. The class which can be elected is enlarged by the federal amendment because the amendment enlarges the group from which, by our constitution, office-holders may be chosen. *Commonwealth* v. *Maxwell*, 271 Pa. St. 378; *Neal* v. *Delaware*, 103 U. S. 370.

If in article 30 our constitution had provided that only male inhabitants should be eligible to elective office, the limitation might not have been affected by a federal amendment relating to the right of suffrage only. It certainly would not have been upon the grounds

herein relied upon. But that is not the situation. The thought expressed in article 30 is not that men are eligible to office because of their sex, but because they are qualified voters. The right of electing and being elected are closely connected in the bill of rights and in article 30. Whatever limits or enlarges the right to vote has the same effect upon eligibility to office.

As to elective offices, women are now eligible in this state upon the same terms as men, because they now answer our constitutional test. They are qualified voters, and as such have the constitutional guaranty of the right "to be elected" to office. The elective offices referred to in article 30 are those which are filled by the direct exercise of the franchise of the voters. The article has no application to officers elected in other ways.

The idea that the framers of our constitution understood that by implication that document limited governmental privileges generally to persons of the male sex is negatived by the fact that, in providing limitations upon the right of suffrage, they used the term "male inhabitant." Had they understood that a limitation of political rights and privileges to that sex was sufficiently implied throughout the constitution, they would not have expressed it here. And since they thought it necessary to expressly state it here, the reasonable conclusion is that its omission elsewhere is intentional, and with a purpose to let the matter remain as at common law. *State* v. *Hostetter*, 137 Mo. 636. The document furnishes ample evidence that the question whether the use of the word male was necessary to a constitutional limitation of rights on account of sex was in the mind of its framers, that they decided such use was necessary, and elected to insert the limitation as to the voting privilege, and by reference thereto as to certain office-holding privileges, but omitted it as to other offices and rights.

It follows that as to appointive offices a different question is presented. No provisions like those applying to elective offices obtain here; and while the constitution contains certain provisions as to age (Const., Pt. II, *art.* 78), and incompatibility of certain offices (*Ib.*, *arts.* 93, 94, 95), no other qualifications are prescribed. The matter is left as it was at common law. *Attorney-General* v. *Abbott*, 121 Mich. 540.

In the *Opinions of the Justices* in the matter of appointing women to be notaries (73 N. H. 621; 78 N. H. 621), attention is drawn to the Massachusetts opinions to the effect that women were not there eligible to that office as it is one named in the constitution of that

state, and an implied sex qualification was there held to attach to all offices so established. *Opinion of the Justices*, 150 Mass. 586; *Opinion of the Justices*, 165 Mass. 599. But as notaries are not named in our constitution, we concluded that there were no constitutional qualifications for the office, and that the legislature, in establishing the office, could abrogate the common-law rule that women are ineligible thereto. *Opinion of the Justices*, 78 N. H. 621.

The opinion carries the implication that there may be general, implied constitutional limitations upon the right to hold public offices created directly by, or mentioned in, the constitution, which limitations do not exist as to public offices created by the legislature by virtue of a constitutional grant of power. Upon further consideration, it seems to us that the proposition is untenable. If the implication existed at all, it would apply to every public office created by the constitution. It would make no difference whether the offices were created directly, or by the grant and exercise of a delegated power. If the framers of the constitution had understood that, whenever they described a public office, either in general terms or by specific name, they referred to it as one that could be held by a male person only, they must have so understood when granting to the legislature the power to establish other offices of the like character.

The conclusion reached and the advice given are sound. The legislature may provide that a woman may hold the office of notary. But the true reason therefor is not that there are constitutional limitations upon the power to appoint constitutional officers, like justices of the peace, while there are none as to statutory officers, like notaries. The reason is that as to all appointive offices the constitution is silent as to sex qualification; and it is within the legislative power to abolish, in whole or in part, the common-law disability of women in respect to such offices.

Our opinion is that while women are now eligible to all elective offices, as to all other offices the common-law rule excludes women. "By our common law, women do not vote in town-meeting. The reason is, that voting is an exercise of governmental power. For the same reason, and by the same law, they do not hold public office." *Ricker's Petition*, 66 N. H. 207, 254.

This common-law rule may be abrogated or modified by the legislature. *Opinion of the Justices*, 78 N. H. 621. From time to time this has been done, as to certain offices or places. P. L., c. 9, s. 2 (trustees of state institutions); P. L., c. 17, s. 2 (notaries public); P. L., c. 363, s. 5 (police matrons, with certain powers of constables); Laws 1927,

*c.* 72 (trustees of the New Hampshire College of Agriculture and Mechanic Arts). No such action has been taken as to the office of justice of the peace. It follows that women are now excluded from that office by virtue of the common-law rule.

While your first inquiry relates to constitutional limitations only, we have assumed that you desire full information as to the power to appoint. The answer to your question is that the constitution of New Hampshire does not forbid the appointment of a woman to the office of justice of the peace. But while there is no constitutional barrier to the action proposed, legislation which has not been enacted is required to remove the common-law disability.

II. Your second inquiry does not appear to relate to any matter now pending before you. For this reason we respectfully ask to be excused from returning an answer thereto, except in so far as such information is afforded by the incidental consideration of the subject in reaching a conclusion as to your first question. *Opinion of the Justices,* 67 N. H. 600; *Opinion of the Justices,* 75 N. H. 613; *Opinion of the Justices,* 79 N. H. 535.

> ROBERT J. PEASLEE.
> LESLIE P. SNOW.
> JOHN E. ALLEN.
> THOMAS L. MARBLE.
> OLIVER W. BRANCH.

October 4, 1927.