REUBEN J. PHILLIPS *vs.* METROPOLITAN PARK COMMISSION.

Suffolk.     June 17, 1913. — September 12, 1913.

Present: RUGG, C. J., HAMMOND, BRALEY, SHELDON, & DE COURCY, JJ.

*Veteran. Civil Service.*

The definition of the word "veteran" in R. L. c. 19, § 20, designating those persons who are entitled to the veterans' preference under the civil service law provided for by that chapter, which includes "a citizen of this Commonwealth who distinguished himself by gallant and heroic conduct while serving in the army or navy of the United States and has received a medal of honor from the President of the United States," does not include one who served in the navy of the United States between 1898 and 1903 and for distinguished conduct in the presence of the enemy received a medal of honor from the Secretary of the Navy.

The preference of veterans provided for in the civil service law is not to be extended
by implication from equivocal words of the statute.

PETITION, filed on February 18, 1913, for a writ of mandamus
directed to the members of the metropolitan park commission,
commanding them to reinstate the petitioner in the rank and office
of sergeant in the police department of that commission.

The case was submitted upon the pleadings and an agreed
statement of facts to *Braley, J.,* who at the request of the parties
reported it for determination by the full court. If the petitioner,
as matter of law, was a veteran within the meaning of R. L. c. 19,
§ 20, and the respondents under § 23 of that chapter as amended
by St. 1910, c. 500, or under St. 1911, c. 624, had no power to re-
move him, a writ of mandamus was to issue; otherwise, the peti-
tion was to be dismissed with costs.

R. L. c. 19, § 20, is as follows: "The word 'veteran' in this
chapter shall mean a person who served in the army or navy of the
United States in the war of the rebellion and was honorably dis-
charged therefrom, or a citizen of this Commonwealth who dis-
tinguished himself by gallant and heroic conduct while serving in
the army or navy of the United States and has received a medal of
honor from the President of the United States."

The case was submitted on briefs.

*W. W. Stover & E. L. Sweetser,* for the petitioner.

*J. M. Swift,* Attorney General, *& W. A. Powers,* Assistant
Attorney General, for the respondents.

RUGG, C. J. The question presented is whether the peti-
tioner is a "veteran" as defined in R. L. c. 19, § 20, in these words:
"The word 'veteran' . . . shall mean . . . a citizen of this Com-
monwealth who distinguished himself by gallant and heroic con-
duct while serving in the army or navy of the United States and
has received a medal of honor from the President of the United
States." The petitioner served in the navy of the United States
between 1898 and 1903 and received a medal of honor "for dis-
tinguished conduct in the presence of the enemy," which was (as
stated in the letter of transmittal) "Awarded [him] by the Honor-
able, the Secretary of the Navy, under Act of Congress of March 3,
1901." That act (U. S. St. 1901, c. 850; 31 U. S. Sts. at Large,
1099) provides that in designated cases any enlisted man of the
navy or marine corps "shall, upon the recommendation of his

commanding officer, approved by the flag-officer and the Secretary of the Navy, receive" a medal of honor.

It is plain that the petitioner does not come within the literal description of our statute, for he did not receive his medal "from the President of the United States." The letter to him in which it was enclosed was signed by a colonel of the marine corps and stated that it was awarded by "the Secretary of the Navy," and the federal statute under which it was issued makes no reference to "the President of the United States," but provides that it shall issue when approved by the "Secretary of the Navy." The statute is in substance a standing regulation of the navy designed (as indicated in part by the title of the original act, of which the act under which the petitioner received his medal of honor is an amendment) "To establish and equalize the grade of line officers" of the navy, to provide for their advancement in rank and in general to promote the efficiency, to strengthen the discipline and to encourage valiant service in the navy.

The laws of the United States have recognized a different kind of medal of honor, commonly more restricted in character, to be presented by the President of the United States. Early instances are found in 2 U. S. Sts. at Large, 830, 831, where gold medals were awarded to Captain Hull of the frigate Constitution, to Captain Decatur of the frigate United States, to Captain Jones of the sloop of war Wasp and to Captain Bainbridge of the frigate Constitution, and silver medals to each commissioned officer of these vessels, all to be presented by the President of the United States. By resolution of Congress (3 U. S. Sts. at Large, 249) the President was requested to present a gold medal to General Jackson. By resolution of July 12, 1862, (12 U. S. Sts. at Large, 623,) the President of the United States was authorized to present medals of honor "to such non-commissioned officers and privates as shall most distinguish themselves by their gallantry in action and other soldier-like qualities, during the present insurrection." By § 6 of U. S. St. of March 3, 1863, c. 79, (12 U. S. Sts. at Large, 751,) the President was authorized to cause additional medals of honor to be struck and "present the same to such officers, non-commissioned officers, and privates as have most distinguished or who may hereafter most distinguish themselves in action." The terms of this act are not restricted as to time and appear to be a continuing

authority limited only by the appropriation. By c. 1485 of U. S. St. of 1904, (33 U. S. Sts. at Large, 274,) provision was made for three thousand additional medals of honor to be presented by the President under like conditions. U. S. St. of 1905, c. 744, (33 U. S. Sts. at Large, 743,) makes provision for medals of honor to be presented by the President to those who show extreme daring in preventing accident or disaster upon railroads, and a joint resolution of July 6, 1912, (37 U. S. Sts. at Large, 639,) for the presentation by the President of a medal of honor to Captain Rostron of the steamship Carpathia.

On the other hand several federal statutes and resolutions of Congress provide for medals of honor to be issued by officers other than the President. 12 U. S. Sts. at Large, 330, 585. 29 U. S. Sts. at Large, 473. 30 U. S. Sts. at Large, 741. 31 U. S. Sts. at Large, 1099, 1465. U. S. Rev. Sts. § 1407.

It is obvious that a medal of honor presented by the President of the United States is a higher reward and a more distinguished decoration than one issued by a subordinate in the service. The acts of Congress to which reference has been made show a clear appreciation of this difference. Where such a difference between the two kinds of medals of honor has been recognized by the acts of Congress and where our statute refers by apt words to the one and not to the other, it is not reasonably possible to interpret these words as more inclusive than the natural significance of the words permits. If it had been the intention of the Legislature to comprehend recipients of medals of honor like that conferred upon the petitioner, it would have been simple to use words unmistakably expressive of that intention. If its intention had been to exclude them and confine the class to veterans of the civil war and those of the army and navy who had received presidential medals of honor, naturally the precise words of the statute would have been used. None others could have been chosen to express such an intent more accurately.

It is urged that the Secretary of the Navy is merely an administrative organ of the President and hence that his act is the act of the President. While this may be true in general, it does not follow that Congress cannot establish a distinction such as its statutes and resolutions plainly disclose between medals of honor awarded by each.

This construction finds confirmation in the circumstance that the language occurs in the civil service law, the design of which is to secure efficiency in the public service and prevent discrimination in appointments to it based on any other consideration than fitness to perform its duties. It concerns a preference in favor of veterans, the constitutionality of which has been much debated, *Brown* v. *Russell,* 166 Mass. 14, and, although sustained by a majority of the justices in an advisory opinion, 166 Mass. 589, in any event cannot go beyond closely confined boundaries. Extension of such preference is not to be implied from equivocal words.

*Petition dismissed.*