OPINION OF THE JUSTICES TO THE SENATE AND THE HOUSE OF REPRESENTATIVES.

*Constitutional Law*, Public employment, Police power, Legislative control of political subdivisions. *Married Woman.*

In the opinion of all the Justices, a proposed statute making a comprehensive exclusion of married women from employment in the public service would be unconstitutional.

In the opinion of all the Justices excepting Justices Cox and RONAN, certain statutes, in effect excluding or removing from employment in the public service married women whose husbands are by law bound to and are able to support them, would be unconstitutional because in violation of arts. 1, 6, and 7 of the Declaration of Rights and of Part II, c. 1, § 1, art. 4 of the Constitution of the Commonwealth; Justices Cox and RONAN were of opinion that in the existing condition of widespread unemployment, such statute would be constitutional as a proper exercise of discretionary power given to the General Court by Part II, c. 1, § 1, art. 4.

The House of Representatives on May 22, 1939, and the Senate in concurrence on May 23, adopted the following order:

WHEREAS, There are pending before the General Court six measures designed to limit the employment of married women in the public service, numbered House 292, 556, 707, 893, 1408 and 1705, respectively, a copy of each of which is submitted herewith; and

WHEREAS, All of said measures contain provisions excluding or removing from the public service married

women, irrespective of their fitness for positions in such service; and

WHEREAS, Said measure numbered House 893 prohibits the employment in the public service of the commonwealth, and of such cities and towns as accept its provisions, of married women whose husbands are lawfully bound and physically and mentally competent to support them, irrespective of the actual employment of such husbands and of their ability or inclination to support their wives; and

WHEREAS, Three of said measures, numbered House 893, 1408 and 1705, respectively, contain provisions for the termination without reasons given in writing, hearing or court review of the employment of certain women now employed in such public service who hereafter marry; and

WHEREAS, Said measures numbered House 707, 1408 and 1705, respectively, also contain provisions for the termination without reasons given in writing, hearing or court review of the employment of certain married women now employed in such public service; and

WHEREAS, By chapter thirty-one of the General Laws and corresponding provisions of earlier laws, provision has been made for the making of rules having the force of law, providing for the appointment of persons to certain classified public offices and employments through open competitive and other examinations to test the practical fitness of applicants; and

WHEREAS, Numerous public offices as well as employments, including many open to women, are classified by said rules, a copy of which is submitted herewith; and

WHEREAS, By sections forty-two A, forty-three and forty-six of said chapter thirty-one, tenure of office, subject to removal after hearing only for just cause specifically given in writing, is secured by law to all persons holding positions included in said classification, except certain police officers, and by sections forty-two B and forty-five thereof the privilege of judicial review of such removal is given to all such persons, with like exceptions; and

WHEREAS, Said sections and like provisions of earlier laws, and said rules, have been in force for many years, and many women have entered into public employment thereunder; and

WHEREAS, Grave doubt exists as to the constitutionality of all of said measures; and

WHEREAS, A solemn occasion and serious emergency exist, requiring the opinions of the Honorable the Justices of the Supreme Judicial Court; now, therefore, be it ORDERED, That the opinions of the Honorable the Justices of the Supreme Judicial Court be required by the General Court on the following important questions of law:

1. Would the provisions of said measures numbered House 292, 556, 707, 893, 1408 and 1705, or any of them, disqualifying married women from public office or employment, unless their husbands are through physical or mental disability unable to support them, if enacted into law, violate the provision of section 1 of Article LXIX of the Amendments to the Constitution of the Commonwealth, that "No person shall be deemed to be ineligible to hold state, county or municipal office by reason of sex", under a proper interpretation of the word "office" as used in said Article of Amendment?

2. Would the prohibition by law of the employment of married women in the public service, if their husbands are physically and mentally capable of working, even if not actually supporting them, substantially as provided in said measures, or any of them, while such employment is open to men, and to unmarried women irrespective of any other means of support they may have, abridge a privilege of a certain class of married women, as citizens of the United States, to enjoy an equal opportunity for public employment, in violation of the provision of section 1 of Article XIV of the Amendments to the Constitution of the United States that no state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States?

3. Would the prohibition by law of the employment of married women, to the extent stated in question No. 2,

while such employment is open to men, and to unmarried women, as stated in said question,

(a) Violate the provision of said section 1 of Article XIV of the Amendments to the Constitution of the United States that no state shall deprive any person of liberty without due process of law?

(b) Violate the provision of said section 1 that no state shall deny to any person within its jurisdiction the equal protection of the laws?

(c) Violate any rights guaranteed to married women by Article I of Part the First of the Constitution of the Commonwealth?

(d) Constitute an arbitrary discrimination in favor of the employment of certain classes of citizens in the public service to the exclusion of others, in violation of Article VI or VII of Part the First of the Constitution of the Commonwealth?

4. Can any unmarried woman who accepted appointment to a position in the classified civil service while sections forty-three and forty-five of chapter thirty-one of the General Laws, or like provisions of earlier laws, were in force, be discharged upon marriage, as provided in section two of said measures numbered House 893, 1408 and 1705, respectively, without the reasons given in writing, hearing and court review provided by said sections forty-three and forty-five, without violating the provision of section 10 of Article I of the Constitution of the United States that no state shall pass any law impairing the obligation of contracts?

5. Would the discharge, under such provisions as those of sections 2, 3 and 4 of the measure numbered House 707, or such as those of section 1 of the measure numbered House 1408 and of the measure numbered House 1705, if enacted into law, of a married woman who accepted appointment to a position in the classified civil service while sections forty-three and forty-five of chapter thirty-one of the General Laws, or like provisions of earlier laws, were in force, without the reasons given in writing, hearing and court review provided by said sec-

tions, violate said provision of section 10 of Article I of the Constitution of the United States?

6. Is it constitutionally competent, under the provisions of the Constitution of the United States and of the Constitution of the Commonwealth referred to in preceding questions, for the General Court to provide for excluding or removing married women from public employment, if their husbands are lawfully bound to support them and physically and mentally capable of working, even if not actually supporting such women, and at the same time leaving such employment available to men, and to unmarried women irrespective of any other means of support they may have, substantially as provided in the measures numbered House 707, 893, 1408 and 1705, or any of them?

7. Would the removal from public employment of all unmarried women upon marriage, in the absence of any provision for the removal of unmarried men upon marriage, substantially as provided in section two of the measure numbered House 893 or in section two of the measure numbered House 1408 and of the measure numbered House 1705, constitute a discrimination against such women, in violation of Section 1 of Article XIV of the Amendments of the Constitution of the United States, or of Article I, VI or VII of Part the First of the Constitution of the Commonwealth?

8. Is it constitutionally competent for the General Court, under the provisions of the Constitution of the United States and the Constitution of the Commonwealth referred to in preceding questions, to exclude or remove married women from the public service, if their husbands are gainfully employed, substantially as provided in section four of the measure numbered House 707?

9. Is it constitutionally competent for the General Court, under the provisions of said Constitutions, to prohibit the employment by the Commonwealth and by counties, cities, towns and districts of any married woman, if her husband is earning three thousand dollars or more per year and she is not lawfully separated from him, substantially as provided in the measure numbered House 292?

10. Is it constitutionally competent for the General Court, under said provisions, to prohibit the employment of a husband and wife at the same time by the Commonwealth, substantially as provided in the measure numbered House 556, or by the city of Lowell, substantially as provided in section five of the measure numbered House 707?

11. Is the General Court authorized and empowered, by the provision of Article IV of Section I of Chapter I of Part the Second of the Constitution of the Commonwealth that "full power and authority are hereby given and granted to the said general court, from time to time, to make, ordain, and establish, all manner of wholesome and reasonable orders, laws, statutes, and ordinances, directions and instructions," to enact into law provisions that the employment in the public service of a single woman shall terminate upon her marriage, or that a married woman shall become eligible for the public service upon divorce, or upon obtaining a court decree that she is living apart from her husband for justifiable cause, or that marriage, except where the husband is physically or mentally disabled, shall be a cause for exclusion or removal of a woman from the public service, substantially as provided in the measures referred to in preceding questions, or any of said measures?

12. In view of the provision of the Preamble to the Constitution of the Commonwealth that "all shall be governed by certain laws for the common good", and of the provision of Article VII of Part the First of said Constitution that "Government is instituted for the common good . . . and not for the . . . private interest . . . of any class of men", can the General Court constitutionally disqualify otherwise competent persons for public service by reason of their marriage, substantially as provided in said measures, or any of them?

On May 25, 1939, the order was transmitted to the Justices, who, on June 29, 1939, returned the following answers:

To The Honorable the Senate and the House of Representatives of the Commonwealth of Massachusetts:

The Justices of the Supreme Judicial Court respectfully submit these answers to questions set forth in an order — copy of which is hereto annexed — adopted by the Senate and by the House of Representatives in concurrence on May 23, 1939, and transmitted to the Justices on May 25, 1939, relating to the constitutionality, under the Constitution of the Commonwealth and the Constitution of the United States, of six bills now pending before the General Court (numbered respectively House 292, 556, 707, 893, and 1408 and 1705 substantially identical in terms) prohibiting the employment in the public service of married women, with various exceptions, or of a husband and wife at the same time. Copies of these bills are annexed to the order.

Under the provision of the Constitution of the Commonwealth authorizing "Each branch of the legislature . . . to require the opinions of the justices of the supreme judicial court, upon important questions of law, and upon solemn occasions," Constitution, Part II, c. 3, art. 2, the questions submitted can properly be answered only as they relate to the pending bills. *Answer of the Justices*, 217 Mass. 607, 611–613; 290 Mass. 601, 603. And, moreover, in accordance with settled practice, we confine our answers to the specific questions of law submitted. *Answer of the Justices*, 299 Mass. 617, 619–620. Since these questions relate necessarily to the pending bills, the scope of the bills must be considered in order to determine the scope of the questions.

The pending bills deal solely with employment as distinguished from holding office, with employees and not with officers. While it may not always be easy to draw the line of distinction between an employment and an office, the existence of the distinction is well established. *Brown* v. *Russell*, 166 Mass. 14, 25–26. *Garvey* v. *Lowell*, 199 Mass. 47, 51, and cases cited. *Attorney General* v. *Tillinghast*, 203 Mass. 539, 543–545, and cases cited. *Gardner* v. *Lowell*, 221 Mass. 150, 153. *Rich* v. *Mayor of Malden*, 252 Mass. 213, 216–217. *O'Connell* v. *Retirement Board of Boston*, 254

Mass. 404. It is to be observed, however, that the distinction between office and employment is not the same as that between the official service and the labor service under the civil service law and regulations. See *Gardner* v. *Lowell*, 221 Mass. 150, 153. None of the bills in terms restricts any person from holding "office." All of them use the words "employment," "employ" or "employed" in describing the restriction imposed. And one of these words is used in the title of each bill. See *Wheelwright* v. *Tax Commissioner*, 235 Mass. 584, 586. One of these bills (House No. 893), however, entitled "An Act relative to the employment of married women in the public service," provides that "No married woman shall be appointed to any position in the service of the commonwealth," with stated exceptions, but in the context the words "employment," "employed" and "employees" are used, and the natural interpretation of the bill is that, like the others, it relates only to positions that are employments and not offices. In interpreting any of the bills, if enacted in its present form, it would be assumed that the language thereof was used advisedly in recognition of the established distinction between officers and employments. See G. L. (Ter. Ed.) c. 4, § 6, Third; *Levin* v. *Wall*, 290 Mass. 423, 425. And for the purpose of considering whether, if enacted, it would be constitutional, we must give it the meaning that it would then have. The questions submitted, therefore, are answered only as they apply to positions that are employments and not offices.

The several bills do not relate to precisely the same political units. House No. 292 relates to employment "by the commonwealth" or "by any county, city, town or district." House No. 893 relates to employment by the Commonwealth or by any city or town therein that accepts the proposed act. House No. 1408 relates to employment by the Commonwealth "or any subdivision thereof," and by any city or town that accepts the proposed act, and House No. 1705 is closely similar. House No. 556 relates only to employment by the Commonwealth, and House No. 707 relates only to employment by the city of Lowell

and then only if the proposed act is accepted by the city. These differences, however, do not affect the governing constitutional principles. "The cities and towns of the Commonwealth are divisions of government established in the public interests. The Legislature is supreme in the control of these governmental instrumentalities, subject to the provisions of the Constitution." *Lee* v. *Lynn*, 223 Mass. 109, 112. See *Adams* v. *Plunkett*, 274 Mass. 453, 463; *Horrigan* v. *Mayor of Pittsfield*, 298 Mass. 492, 499. And this is true with respect to other divisions of the Commonwealth. See *Goodale* v. *County Commissioners of Worcester*, 277 Mass. 144. This legislative power of control embraces regulation by law of employment in the service of cities, towns and other divisions of the Commonwealth. *Opinion of the Justices*, 138 Mass. 601, 603–604. *Ransom* v. *Boston*, 192 Mass. 299, 304. *Opinion of the Justices*, 208 Mass. 619, 622–623. Moreover, such regulation need not be the same in all the cities, towns and other divisions of the Commonwealth (*Opinion of the Justices*, 138 Mass. 601, 603–604), since, as was said in the opinion just cited, the General Court "has the right to make local laws to meet the peculiar exigencies of any part of the community" (page 603). See also *Broadhurst* v. *Fall River*, 278 Mass. 167, 170–171; *Paquette* v. *Fall River*, 278 Mass. 172, 176. And where matters are of local concern it may be provided that statutes dealing therewith shall become effective in any particular city or town only when accepted by such city or town. *Graham* v. *Roberts*, 200 Mass. 152, 157–158, and cases cited. See *Woods* v. *Woburn*, 220 Mass. 416, 419, 421–422; *Wright* v. *Walcott*, 238 Mass. 432, 438; *Opinion of the Justices*, 286 Mass. 611, 618–619; *Mount Washington* v. *Cook*, 288 Mass. 67, 73–74. We perceive no constitutional objection to any of the bills as they relate to employment by a city or town or other "subdivision" of the Commonwealth that is not applicable equally to the bills as they relate to employment by the Commonwealth itself. We proceed, therefore, to consider the underlying principles involved.

The power of the General Court to regulate by law em-

ployment in the public service is derived from the provision of the Constitution of Massachusetts, Part II, c. 1, § 1, art. 4, that "full power and authority are hereby given and granted to the said general court, from time to time, to make, ordain, and establish, all manner of wholesome and reasonable orders, laws, statutes, and ordinances, directions and instructions, either with penalties or without; so as the same be not repugnant or contrary to this constitution, as they shall judge to be for the good and welfare of this commonwealth, and for the government and ordering thereof, and of the subjects of the same, and for the necessary support and defence of the government thereof." *Opinion of the Justices*, 138 Mass. 601, 602–603; 166 Mass. 589, 594. Another provision of the same article deals with naming and settling "civil officers." See *Opinion of the Justices*, 166 Mass. 589, 594; 302 Mass. 605, 619–620, 621–622; *ante*, 615, 621–622. It is to be observed that under the provision quoted the laws made by the General Court are to be "wholesome and reasonable" and "as they shall judge to be for the good and welfare of this commonwealth." Other provisions of the Constitution which are referred to in the questions submitted are arts. 1, 6 and 7 of the Declaration of Rights. Article 1 recognizes the existence of certain "natural, essential, and unalienable rights," among them "that of acquiring, possessing, and protecting property." Article 6 provides, in part, that "No man, nor corporation, or association of men, have any other title to obtain advantages, or particular and exclusive privileges, distinct from those of the community, than what arises from the consideration of services rendered to the public." And art. 7 provides, in part, that "Government is instituted for the common good . . . and not for the profit, honor, or private interest of any one man, family, or class of men." All these constitutional provisions must be construed together to make an harmonious frame of government. *Mayor of Lynn* v. *Commissioner of Civil Service*, 269 Mass. 410, 412. *Opinion of the Justices*, 291 Mass. 578, 586. See also *Brown* v. *Russell*, 166 Mass. 14, 21–23, 25–26. One of the questions

submitted refers to the provision in the Preamble to the Constitution of the Commonwealth that the nature of the "body politic" is a "social compact" by which the "whole people" and "each citizen" covenant that "all shall be governed by certain laws for the common good." Without considering whether the Preamble constitutes either a grant of power or a limitation upon its exercise (compare *Jacobson* v. *Massachusetts,* 197 U. S. 11, 22), it is enough to say with respect to the matters involved in the questions submitted that no grant of power or limitation thereon is to be found in the Preamble that is not embodied in the other provisions of the Constitution.

The power conferred by Part II, c. 1, § 1, art. 4, of the Constitution upon the General Court over employment in the public service is in the nature of the power of an employer. "In its representative capacity, within appropriate functions of legislation, the General Court stands in the position of employer. It may establish general rules for the employment of labor." *Lee* v. *Lynn,* 223 Mass. 109, 112. See also *Opinion of the Justices,* 208 Mass. 619, 623; *Goodale* v. *County Commissioners of Worcester,* 277 Mass. 144, 146–147. A distinction has been recognized between "laws passed by the Legislature regulating the conduct of the State and its departments and subdivisions as employer, which are within its right, and similar laws designed to control the conduct of the general public." *Lee* v. *Lynn,* 223 Mass. 109, 112. See also *Goodale* v. *County Commissioners of Worcester,* 277 Mass. 144, 146–147. Undoubtedly the General Court under the Constitution has broader power to deal as employer with employees than to regulate the conduct of the general public. But it does not follow that there are no constitutional limitations upon the power of the General Court as employer. The General Court does not in all particulars have the same freedom of action as a private employer with respect to the employment of citizens.

In the case of *Lee* v. *Lynn,* 223 Mass. 109, previously cited, it was said, at page 112, by Chief Justice Rugg, speaking for the court: "Since it [the General Court] is a public agency directing the expenditure of money raised

by taxation, it cannot make arbitrary discriminations and favor the employment of one class of citizens to the exclusion of others." This statement was made in a case which sustained the validity of a statute providing that in the "employment of mechanics and laborers" in the public service "preference shall be given to citizens of the Commonwealth." The further statement was made: "But a preference of citizens over aliens in the public service is not favoritism among the subjects of the Commonwealth. Aliens are not members of the State in the strict sense." In reaching a like result the Court of Appeals of New York in *State* v. *Crane*, 214 N. Y. 154, speaking by Cardozo, J. — later Justice of the Supreme Court of the United States — said at page 161: "Since government, in expending public moneys, is expending the moneys of its citizens, it may not by arbitrary discriminations having no relation to the public welfare, foster the employment of one class of its citizens and discourage the employment of others. It is not fettered, of course, by any rule of absolute equality; the public welfare may at times be bound up with the welfare of a class; but public welfare, in a large sense, must, none the less, be the end in view. Every citizen has a like interest in the application of the public wealth to the common good, and the like right to demand that there be nothing of partiality, nothing of merely selfish favoritism, in the administration of the trust. But an alien has no such interest, and hence results a difference in the measure of his right. To disqualify citizens from employment on the public works is not only discrimination, but arbitrary discrimination." It was also said (page 168) with respect to the selection of a contractor — and the principle is equally applicable to an employee — "It is true that the individual, though a citizen, has no legal right in any particular instance to be selected as contractor by the government. It does not follow, however, that he may be declared *disqualified* from service, unless the proscription bears some relation to the advancement of the public welfare." We think that the statements here quoted — one group of them by the court of which we are Justices and the other in con-

formity therewith by the highest court of a sister State — represent the law of this Commonwealth, and that consequently the General Court cannot constitutionally enact a law, even with respect to employment in the public service, that arbitrarily discriminates against any class of citizens by excluding it from such service. This conclusion results from the frame of government as a whole but particularly from the limitations in Part II, c. 1, § 1, art. 4, upon the grant of power to make laws, and from the guaranties in arts. 1, 6 and 7 of the Declaration of Rights "for equal protection of equal laws without discrimination or favor based upon unreasonable distinctions." *Brest* v. *Commissioner of Insurance*, 270 Mass. 7, 14. See also *Brown* v. *Russell*, 166 Mass. 14, 21–23; *Mayor of Lynn* v. *Commissioner of Civil Service*, 269 Mass. 410, 411–412. That the rule against arbitrary discrimination limits the power of the General Court over employment in the public service, as well as its more general legislative power, follows necessarily from the reasoning upon which the decisions relating to preference of veterans in the public service are based. See *Mayor of Lynn* v. *Commissioner of Civil Service*, 269 Mass. 410, and cases cited. Indeed it was said in *Phillips* v. *Metropolitan Park Commission*, 215 Mass. 502, at page 506, that a preference in favor of veterans "in any event cannot go beyond closely confined boundaries."

Any one of the bills, if enacted and valid, would exclude a large class of citizens of the Commonwealth from the public service. House No. 292 would exclude any "married woman" unless "her husband is earning less than three thousand dollars per year or . . . she is living apart from her husband for justifiable cause." House No. 707 would exclude from employment by the city of Lowell, so far as any new employment is concerned, "any female where there is a marital status in existence," though in the case of those already employed it permits continued employment of those "whose husbands by reason of mental or physical incapacity are unable to provide for their wives and children and who are without sufficient funds or income to support their wives and children," and those whose hus-

bands are "not engaged in a gainful occupation." The exclusion by this bill also expressly applies to those "female persons . . . whose husbands are also employed by the city of Lowell." House No. 893 would exclude from employment every married woman unless her husband "either through physical or mental disability is unable to support her, or, by court decree, is not bound to provide such support," with the exception of employment not extending beyond six months where the "head of the service" requests such continued employment. House No. 1408 and House No. 1705 would exclude from employment all married women "whose husbands are capable of accepting permanent employment," but specifically excepts from its application married women "whose husbands are permanently disabled by reason of mental or physical illness." House No. 556 applies to both husband and wife as it provides that "A husband and wife shall not at the same time be employed in the service of the commonwealth." In general, therefore, the bills except House No. 556 would exclude from employment in the public service the entire class of married women with the exceptions here pointed out. It is apparent that, with respect to married women not employed by the political unit to which the bill relates at the time it takes effect, one of the bills would exclude all of them, without exception, from such employment and that each of the other bills would exclude such women with the stated exceptions. Most, if not all, of the bills also would exclude married women, with stated exceptions, already employed by such a political unit from continuing in their employment. Thus the broad question of the constitutionality of the bills, irrespective of whether the married women to whom they apply are in the employ of the respective political units at the time such bills take effect, requires consideration. And with respect to at least one of the bills (House, No. 707), as applied to persons not employed when the bill takes effect, the constitutionality of the exclusion of all married women, without exception, from employment by the political unit involved must be considered.

Married women are not, by reason either of being women or of being married, excluded from citizenship, though before comparatively recent constitutional changes women did not have the political rights of voting and of holding office. Constitution of the United States, Fourteenth Amendment, § 1; Nineteenth Amendment. Arts. 68 and 69 of the Amendments to the Constitution of Massachusetts. *Robinson's Case*, 131 Mass. 376. *Opinion of the Justices*, 150 Mass. 586; 237 Mass. 591, 595; 240 Mass. 601, 608. *Minor v. Happersett*, 21 Wall. 162, 169–173. And even under the constitutional provisions now in force there are governmental duties which are not imposed upon women, such as jury service. *Commonwealth v. Welosky*, 276 Mass. 398. Women married or unmarried are members of the State. Subject only to constitutional limitations and valid statutory limitations they share with other citizens the duties and privileges of citizenship. And like other citizens they are entitled to the benefit of the constitutional guaranties against arbitrary discrimination. This is true with respect to statutes enacted under the so called police power for the control of the conduct of the general public, though — in accordance with the general principle — there is no arbitrary discrimination in a statutory classification "rational in scope and effect" and bearing "some manifest relation to the main object sought to be accomplished by the statute" (*Commissioner of Corporations & Taxation v. Coöperative League of America*, 246 Mass. 235, 239), even if based upon difference in sex. *Commonwealth v. Hamilton Manuf. Co.* 120 Mass. 383. *Commonwealth v. Riley*, 210 Mass. 387, 390, affirmed in *Riley v. Massachusetts*, 232 U. S. 671. *Quong Wing v. Kirkendall*, 223 U. S. 59, 63. *West Coast Hotel Co. v. Parrish*, 300 U. S. 379, 394–395. And it is true also with respect to statutes relating to employment in the public service. The reason precluding arbitrary discrimination by such statutes, as pointed out in *Lee v. Lynn*, 223 Mass. 109, 112, that the General Court "is a public agency directing the expenditure of money raised by taxation," applies as fully to female citizens as to male citizens. It is true of women as of men that, as stated in *State v. Crane*,

214 N. Y. 154, 161, "Every citizen has a like interest in the application of the public wealth to the common good, and the like right to demand that there be nothing of partiality, nothing of merely selfish favoritism, in the administration of the trust." Moreover, there is nothing in the Constitution of the Commonwealth that expressly or impliedly excludes women as a class from employment in the public service, whatever was true in the past, or is now true, with respect to public offices and certain specific governmental functions.

We consider, therefore, first, whether it would be arbitrary discrimination, in violation of the Constitution of the Commonwealth, for a statute to exclude from public employment of every nature by a political unit all married women irrespective of age, character and capabilities, and, later, the effect of various exceptions to such a comprehensive exclusion. (Though the only bill submitted that is so comprehensive relates solely to employment by the city of Lowell, it is obvious that there is no distinction in principle between such a bill and a bill of broader territorial application.) This comprehensive exclusion clearly would result in discrimination, not only between men and married women, but also between unmarried women and married women. It is sufficient for the purposes of this opinion to consider the latter discrimination. We are of opinion that it would be arbitrary and that for this reason a statute making such a comprehensive exclusion of married women would be unconstitutional.

Employment in the public service undoubtedly is essential to the performance of governmental functions. And it is common knowledge that many women are so employed. In accordance with the principles stated married women who are citizens cannot be excluded by statute from employment in the public service unless such exclusion can be found to have some real tendency to advance the public welfare and not merely to advance the welfare of a particular class or particular classes of citizens — except as there is some special reason on grounds of public welfare for advancing the welfare of such class or classes of citizens.

It was said in *Brown* v. *Russell*, 166 Mass. 14, 25, that in "our form of government it is fundamental that public offices are a public trust, and that the persons to be appointed should be selected solely with a view to the public welfare." This statement is applicable also to employments by the public. Veterans' preference statutes have been sustained partly on the ground that the General Court may have thought that veterans constituted a class of citizens who would be likely to possess certain "valuable qualifications for any public office or employment," but partly on the ground that the General Court may have thought that veterans constituted a class of persons recognition of whose services by advancing their welfare through appointment to office or employment "would promote that love of country and devotion to the welfare of the State which it concerns the Commonwealth to foster." *Opinion of the Justices*, 166 Mass. 589, 595. Even statutes enacted under the so called police power for the protection of women — where held valid — are sustained on the ground that the State has a peculiar interest in the protection of women and that the limitations placed upon their contracting powers with respect to such matters as hours of labor are imposed not "solely for her benefit, but also largely for the benefit of all." *Muller* v. *Oregon*, 208 U. S. 412, 422. *West Coast Hotel Co.* v. *Parrish*, 300 U. S. 379, 394–395. See also *Commonwealth* v. *John T. Connor Co.* 222 Mass. 299, 301. The test in all instances is the public welfare.

The question for judicial inquiry is not the wisdom or expediency of discriminating against the employment of married women in the public service to the extent of excluding all such women from public employment of every nature, but whether such discrimination so lacks any reasonable basis in relation to the advancement of the public welfare as to be arbitrary. See *Howes Brothers Co.* v. *Unemployment Compensation Commission*, 296 Mass. 275, 284. See also *Borden's Farm Products Co. Inc.* v. *Ten Eyck*, 297 U. S. 251, 263. In our opinion this discrimination lacks such a reasonable basis. The constitutional rule against arbitrary discrimination remains unchanged through

the years, but its application may vary with changing circumstances. See *Vigeant* v. *Postal Telegraph Cable Co.* 260 Mass. 335, 342; *Howes Brothers Co.* v. *Unemployment Compensation Commission*, 296 Mass. 275, 283. Present-day circumstances with respect to employment of married women in gainful occupations — which are matters of common knowledge — cannot be wholly disregarded in determining whether discrimination against them in public employment is arbitrary. And though a statutory classification is not necessarily unreasonable because "it is not made with mathematical nicety or because in practice it results in some inequality" (*Lexington* v. *Govenar*, 295 Mass. 31, 36), it is arbitrary if not resting "upon some ground of difference having a fair and substantial relation to the object of the legislation." *Howes Brothers Co.* v. *Unemployment Compensation Commission*, 296 Mass. 275, 287. Here we must assume that object to be the regulation of employment in the public service in the interest of the public welfare.

The principal — if not the exclusive — basis for regulation by statute of the selection of persons for employment in the public service is their qualifications for the performance of the duties that are to be performed. As was said in *Opinion of the Justices*, 240 Mass. 611, 614, "The right of all persons equally to be selected for public employment in instances where the Constitution does not establish the qualifications is subject to reasonable regulation by the Legislature as to qualifications." It may be that it could be found that married women as a class are not qualified — or are substantially less qualified than unmarried women as a class — for some employments in the public service. See *Sheldon* v. *School Committee of Hopedale*, 276 Mass. 230, 236; *Rinaldo* v. *School Committee of Revere*, 294 Mass. 167, 169–170. But we are of opinion that it cannot be found that married women as a class are so lacking — either absolutely or relatively as compared with unmarried women as a class — in qualifications for employment in all branches of the public service that the exclusion of married women as a class from public employ-

ment of every nature on the ground of lack of qualifications therefor would be reasonable.

We are further of opinion that — apart from the matter of qualifications already considered — no ground having a substantial relation to the public welfare can be found for excluding married women as a class from employment in the public service. That, within "closely confined boundaries," weight may be given in the selection of persons for employment in the public service to considerations other than that of their qualifications therefor, follows from the decisions in the cases relating to the veterans' preference statutes. See *Phillips* v. *Metropolitan Park Commission*, 215 Mass. 502, 506; *Mayor of Lynn* v. *Commissioner of Civil Service*, 269 Mass. 410, and cases cited. The proposed statute excluding married women from employment in the public service obviously would constitute unmarried women an absolutely preferred class with respect to all such employment of women as compared with married women as a class. Thus the matter has two aspects: (a) whether unmarried women constitute a class of persons which on any reasonable ground in the interest of the public welfare can by statute be absolutely preferred to married women in selections for employment in the public service, and (b) whether married women constitute a class of persons which on any reasonable ground in the interest of the public welfare can by statute be absolutely excluded from such employment.

It has been recognized that "harm to the common weal" may arise from unemployment warranting relief by legislation within constitutional limits. *Howes Brothers Co.* v. *Unemployment Compensation Commission*, 296 Mass. 275, 283. A statute providing for relief from the evil of unemployment would not necessarily be invalid as discriminatory because it did not embrace the entire field of unemployment. See *West Coast Hotel Co.* v. *Parrish*, 300 U. S. 379, 400. But, so far as the proposed legislation is directed to providing employment for unmarried women, it does not merely fall short of dealing with the entire problem. Its obvious tendency is to provide employment for

unmarried women at the expense of married women by absolutely depriving the latter as a class of equal opportunity for employment in the public service.

Clearly there is no ground for preferring unmarried women for such employment like that on which statutes giving preference to veterans have been sustained. Doubtless there are those who consider it to be for the interest of unmarried women that they have employment even if it is not needed for their support. But we are of opinion that it cannot reasonably be thought that this special interest of a particular class of women bears such a substantial relation to the public welfare as warrants giving by statute to unmarried women as a class a preference over married women as a class in selection for public employment. It may be urged, however, that unmarried women as a class have a greater need of employment for their support — and hence of public employment — than married women whose husbands are under a legal obligation to support them. See *Fisher* v. *Drew*, 247 Mass. 178, 182; *French* v. *McAnarney*, 290 Mass. 544, 546. Without discussing, at large, the bearing of the need of employment for support on the selection of persons for employment in the public service, it is at least true, in our opinion, that the marital status of women under existing conditions bears no such substantial relation, as a rule of general application, to their need of employment for support — and hence of public employment — as to warrant discrimination in public employment on that ground alone in favor of unmarried women as a class as against married women as a class. Clearly it cannot be found that there are not many unmarried women who do not need employment for their support, or that unmarried women as a class are precluded from obtaining positions in private employment by reason of any general discrimination against them in such employment. On the other hand it cannot be found that the legal right of married women to be supported by their husbands in fact — particularly in existing circumstances of employment generally (compare *Howes Brothers Co.* v. *Unemployment Compensation Commission*, 296 Mass. 275, 283; *West Coast Hotel Co.* v.

*Parrish*, 300 U. S. 379, 399) — assures them of support or assures the support of minor children in which the mother has an interest though she may not have the same duty with respect thereto as the father. See *Creeley* v. *Creeley*, 258 Mass. 460, 463. The situations described are not merely inequalities incidental to a discrimination in general reasonable (see *Lexington* v. *Govenar*, 295 Mass. 31, 35) but rather bear directly upon the reasonableness of the discrimination. We conclude that the proposed preference of unmarried women for public employment, considered in its aspect as a privilege granted to such women, does not rise higher than legislation "for the mere advantage of particular individuals" and not "for the protection of a basic interest of society" (compare *Home Building & Loan Association* v. *Blaisdell*, 290 U. S. 398, 445), and, unless justified on some other ground, is in conflict with the constitutional guaranty to all citizens of equal opportunity for employment in the public service. Even if marital status could be found to bear close relation to the need of support, we do not intimate that a different result would follow.

The preference, however, given in effect by the proposed statute results from the express disqualification of married women from such employment, and it is necessary to consider whether any reasonable ground can be found for such a statutory disqualification irrespective of the advantage thereby conferred upon unmarried women. In our opinion this disqualification cannot be imposed by statute under the legislative power to regulate the relations of husband and wife. At common law a married woman was under many civil disabilities even to the extent that she was incapable of contracting (*Bartlett* v. *Cowles*, 15 Gray, 445, 446) and that the earnings of her personal labor belonged to her husband. *McKavlin* v. *Bresslin*, 8 Gray, 177. This was in conformity with the common law conception of "the unity or identity of interest between husband and wife." See *Butler* v. *Ives*, 139 Mass. 202, 204. But even at common law a married woman was not precluded, at least with the consent of her husband, from engaging in employment for

hire — though her earnings belonged to her husband. Beginning, however, with St. 1842, c. 74, a series of so called married women statutes have been passed removing many of her common law disabilities. It has been said that, except "as to dealings with her husband, she is made a person *sui juris*" (*Pacific National Bank* v. *Windram*, 133 Mass. 175, 178), and that the "unity and identity of interest which by the common law existed between husband and wife have been impaired. . . . They are not, however, entirely done away with." *Kelley* v. *New York, New Haven & Hartford Railroad*, 168 Mass. 308, 311. Moreover, it was said in *Butler* v. *Ives*, 139 Mass. 202, 204, that "As the laws have destroyed this unity, the incidents or consequences of the unity ought not to continue to operate", and in *Nolin* v. *Pearson*, 191 Mass. 283, 285, after a reference to some of the provisions of the common law, that "While the common law prevails in this Commonwealth except so far as it may have been modified by statute, it is obvious from this brief reference to some of its provisions that the development of modern society would imperatively call from time to time for the modification or abrogation of many if not all of these archaic conditions." Subject to certain statutory limitations, therefore, the right of a wife "to employ her time for the earning of money on her own account is as complete" as her husband's. *Harmon* v. *Old Colony Railroad,* 165 Mass. 100, 104. We need not inquire as to the extent to which, under the Constitution, the General Court may, by statutes of general application, revive in whole or in part the common law disabilities of married women or impose upon them other disabilities of like nature so as to revive in whole or in part the unity and identity of husband and wife existing at common law. Compare *Todd* v. *Clapp*, 118 Mass. 495. In our opinion, however, a statute limited to excluding married women from equal opportunities for public employment — to which as citizens they are entitled subject to reasonable regulations — bears no substantial relation to the purpose of restoring the unity and identity of husband and wife existing at common law. Furthermore, though statutes

may be passed for the protection of the health, safety and welfare of women and of special classes of them (*West Coast Hotel Co.* v. *Parrish*, 300 U. S. 379, 394–395, 400), and very likely of married women as a class as the potential mothers of the race, we think that the absolute exclusion of married women of all ages from public employment of every nature cannot be found to bear any reasonable relation to such protection.

Since in our opinion a statute providing for a comprehensive exclusion of all married women from public employment would be unconstitutional, it is necessary to consider the effect of the exceptions to such an exclusion provided for by the bills submitted. The exception in House No. 707 is limited to married women already employed in the public service of the political unit to which the bill applies and for this reason, if for no other, does not meet the fatal objections to the bill already stated. The exceptions in four of the other bills (House No. 292, House No. 893, House No. 1408 and House No. 1705) and in House No. 707, relating to married women already employed in the public service, apply in some instances to married women who have not full marital status and in all instances to married women whose husbands are under some limitations with respect to their ability to support their wives. The effect of these exceptions would be that certain married women would be classified for the purpose of public employment with unmarried women. But even these proposed modifications of the classification fall short of meeting the objections already stated to a statutory discrimination in the selection of persons for public employment in favor of unmarried women as a class and against married women as a class. Clearly none of the exceptions would render the proposed discrimination more reasonable on the basis of qualifications for employment, and, even if need of employment for support is to be given weight in such selection, the discriminations resulting under these modified classifications in favor of unmarried women as a class and against married women as a class, subject to the proposed exceptions, could not in our opinion be found to be reasonable.

We conclude, therefore, that House bills numbered 292, 893, 1408, 1705 and 707, if enacted, would be in violation of the Constitution of the Commonwealth because making arbitrary discriminations in the selection of persons for employment in the public service. Discriminations that would be arbitrary as against persons not already employed in the public service clearly would be arbitrary as against persons already so employed, and it is unnecessary to consider whether there could be any additional constitutional objection to such discriminations as against persons already so employed. The conclusion reached is based upon the provisions of the Constitution of the Commonwealth considered together, but particularly upon the provisions of Part II, c. 1, § 1, art. 4, and arts. 1, 6 and 7 of the Declaration of Rights (Part I of the Constitution). It would serve no useful purpose to consider the effect of any of these provisions apart from other constitutional provisions. Nor would it serve any useful purpose to consider whether any of these proposed bills would violate the provisions of the Constitution of the United States.

House No. 556, providing that "A husband and wife shall not at the same time be employed in the service of the commonwealth," differs from the other five bills in that it is equally applicable to married men and married women. It does discriminate, however, between a particular class of married persons and all other persons married or unmarried, though under the Constitution all citizens, subject to reasonable regulations, have the right, as already stated, to equal opportunity for employment in the public service. Even if it be assumed — a matter on which we express no opinion — that need of employment properly could be given weight in selecting persons for employment in the public service, in our opinion it cannot be found that persons married to employees of the Commonwealth as a class have in general less need for employment than other persons unmarried or married to persons not employed by the Commonwealth, considered as a class, irrespective of all other circumstances affecting them, whatever may be true in particular instances. Under the proposed bill, if enacted,

persons having no greater need of employment than persons married to employees of the Commonwealth could be employed by the Commonwealth in preference to persons married to such employees. In our opinion such a discrimination would be arbitrary. And we think it clear that, apart from need of employment, no ground bearing any reasonable relation to the public welfare can be found for such a discrimination.

Though in our opinion House No. 707 as a whole is unconstitutional, a specific question is directed to the provision thereof that "the employment of all female persons . . . whose husbands are also employed by the city of Lowell" shall cease "on and after the effective date" of the act. This provision in our opinion is open to the same objections as House No. 556, though perhaps in a somewhat lesser degree, if need of employment is to be considered, because of some other circumstances taken into account by the bill. We think, however, that the discrimination is not rendered reasonable because of these other circumstances, and that the discrimination made by the bill is arbitrary, and the provision therefor unconstitutional, irrespective of the effect of the further discrimination between male and female employees of the city.

In view of the principles stated, we answer the questions submitted as follows:

The answer to the third question, subdivision (d), is "Yes."

The answer to the sixth question is "No."

The answer to the seventh question is "Yes."

The answer to the eighth question is "No."

The answer to the ninth question is "No."

The answer to the tenth question is "No."

The answer to the eleventh question is "No."

In view of the answers to these questions, no answers appear to be required to the other questions.

FRED T. FIELD.

CHARLES H. DONAHUE.

HENRY T. LUMMUS.

STANLEY E. QUA.

ARTHUR W. DOLAN.

To The Honorable the Senate and the House of Repre-
sentatives of the Commonwealth of Massachusetts:

I agree with the conclusions reached in the opinion signed
by Mr. Justice Ronan and, in general, adopt his reasoning.

Louis S. Cox.

To The Honorable the Senate and the House of Repre-
sentatives of the Commonwealth of Massachusetts:

I agree with the opinion signed by the majority of the
Justices that the general exclusion of married women from
the public employment solely on account of their marital
status would be contrary to law, but I do not agree that it
is not within the competency of the General Court to deter-
mine that, in the interest of the common good, the employ-
ment of such women should be prohibited, if their hus-
bands are gainfully employed or able to furnish them with
adequate support. Neither do I agree that the General
Court has not the power to prescribe the terms and condi-
tions under which the Commonwealth, as an employer, will
contract with those it hires for the rendition of services, if
the establishment and observance of such terms and condi-
tions are a reasonable method for the accomplishment of
public good in any of its various aspects.

The General Court, acting as the representative of the
Commonwealth and its political subdivisions in the employ-
ment of persons, has a broader power to define those who
are eligible to seek and secure such employment than it
would have in regulating the qualifications of those engaged
in the service of private industry. *Lee* v. *Lynn*, 223 Mass.
109, 112. *Mayor of Lynn* v. *Commissioner of Civil Service*,
269 Mass. 410. *Truax* v. *Raich*, 239 U. S. 33. *Heim* v.
*McCall*, 239 U. S. 175. The General Court may not only
establish the qualifications of those whom the Common-
wealth, counties, cities and towns may hire, but it may
also fix their compensation, establish their hours of work,
provide benefits as workmen's compensation and retire-
ment allowances, protect their permanency of employment,
change their duties, and abolish their employment. The

Commonwealth and its governmental agencies have many of the attributes commonly possessed by a master in his relations to a servant. *Taft* v. *Adams*, 3 Gray, 126. *McAuliffe* v. *Mayor & Aldermen of New Bedford*, 155 Mass. 216, 220. *Woods* v. *Woburn*, 220 Mass. 416. *Newton* v. *Commissioners*, 100 U. S. 548. *Higginbotham* v. *Baton Rouge*, 306 U. S. 535 (decided April 17, 1939).

We are not dealing with the right of women to hold public office, as that is settled by an amendment to the Constitution and by an advisory opinion of the justices. See art. 69 of the Amendments to the Constitution; *Opinion of the Justices*, 240 Mass. 616. We are, however, concerned with the power of the General Court to regulate the eligibility of a certain class of married women to enter or to continue in public employment. In none of the bills under consideration is there express preference given to any class of women, but I am willing to assume that the actual operation of any of the bills, if enacted into law, will result in a preference to single women over married women in the public employment. With that concession, it does not follow that the General Court cannot grant such a preference to the disadvantage of married women whose husbands are able to support them. A reasonable preference to a designated class in public employment has been uniformly upheld by this court for more than half a century. *Opinion of the Justices*, 145 Mass. 587, 589. *Opinion of the Justices*, 166 Mass. 589. *Ransom* v. *Boston*, 192 Mass. 299. *Rich* v. *Mayor of Malden*, 252 Mass. 213. *Mayor of Lynn* v. *Commissioner of Civil Service*, 269 Mass. 410. The basis upon which a preference has been supported is that it is a reward for past services rendered in defence of the country, and that its grant tends to inculcate and foster patriotism in our people. The conclusion of the General Court that the bestowal of such a reward would enhance the public welfare is a sound and rational view. But does that basis rest on any ground more secure under our frame of government than the basis upon which it is proposed in the present bills to prefer unmarried women in the public employment to married women whose husbands are able properly to pro-

vide for them? Preferences in the cases last cited were favors granted for past services, while the preferences now in question are simply the method proposed to lessen .the general unemployment now prevailing in this Commonwealth. Courts take judicial notice of the existence of an economic depression, that an extraordinary number of persons are in need, and of widespread unemployment with its attendant serious consequences both to society and to the individual. *Mazmanian* v. *Kuken*, 285 Mass. 516. *Howes Brothers Co.* v. *Unemployment Compensation Commission*, 296 Mass. 275, 283. *West Coast Hotel Co.* v. *Parrish*, 300 U. S. 379. *Ohio Bell Telephone Co.* v. *Public Utilities Commission of Ohio*, 301 U. S. 292.

None of the bills is designed to aid any individual or a special class, but all of them are designed to lessen the evils of unemployment. The fact that individuals might be the direct beneficiaries of any plan that the General Court might adopt in lessening the general distress caused by unemployment is not sufficient ground to strike down such a plan unless the method selected has no rational connection with alleviating the conditions attempted to be reached. The grant of a pure gratuity to an individual may properly be made if such action, in the judgment of the General Court, is conducive to the public good. *Opinion of the Justices*, 175 Mass. 599. *Opinion of the Justices*, 240 Mass. 616.

The improvement of conditions now harassing our people is admittedly a matter vitally affecting the public interest. *Howes Brothers Co.* v. *Unemployment Compensation Commission*, 296 Mass. 275, 283. *United States* v. *Butler*, 297 U. S. 1, 65, 66. *Carmichael* v. *Southern Coal & Coke Co.* 301 U. S. 495. *Steward Machine Co.* v. *Davis*, 301 U. S. 548. *Helvering* v. *Davis*, 301 U. S. 619. Huge sums have been spent in public relief and an enormous burden has been put upon the taxpayers and private business. The General Court may adopt any measure rationally designed to diminish the present drain upon the public treasury by a more equitable distribution of public employment in such a manner as will lessen the burden of government. That is one of the predominating purposes of the

bills now in question.  The occasion that gives rise to them
is the prevailing widespread lack of employment of our
citizens.  The purport and intent of these bills can be de-
termined and adjudged only in the light of this underlying
economic situation.  It is the public exigency that creates
the necessity for legislation that gives validity, vitality and
significance to the remedies adopted by the General Court
to cope with the existing public evil.  Courts in order
properly to perform their duties must and do take judicial
notice of matters of common knowledge and this has been
held to include the present economic depression, the extraor-
dinary number of persons in need and the extensive un-
employment.  *Mazmanian* v. *Kuken,* 285 Mass. 516, 519.
*Howes Brothers Co.* v. *Unemployment Compensation Com-
mission,* 296 Mass. 275, 283.  *West Coast Hotel Co.* v.
*Parrish,* 300 U. S. 379.  *Ohio Bell Telephone Co.* v. *Pub-
lic Utilities Commission of Ohio,* 301 U. S. 292, 301.  It
was said in *Commonwealth* v. *Jacobson,* 183 Mass. 242,
at page 247, that, in considering whether or not a statute
is constitutional, the judge "would have been obliged to
consider the evidence in connection with facts of com-
mon knowledge, which the court will always regard in
passing upon the constitutionality of a statute."

   The constitutional mandate (Part II, c. 1, § 1, art. 4)
by which "full power and authority are hereby given and
granted to the said general court, from time to time, to
make, ordain, and establish, all manner of wholesome and
reasonable orders, laws, statutes, and ordinances, directions
and instructions, either with penalties or without; so as
the same be not repugnant or contrary to this constitu-
tion, as they shall judge to be for the good and welfare
of this commonwealth," must be capable of application to
the diverse and various complexities of modern society.
This constitutional provision "always has been interpreted
broadly in its application to statutes enacted from time
to time by the Legislature to satisfy the changing needs
of society."  *Commonwealth* v. *Libbey,* 216 Mass. 356, 357.
The present bills, in so far as they deal with married women
whose husbands are able to support them, plainly come

within that grant of power. It was the exercise of this same power that was held sufficient to enable the General Court to impose a tax for the benefit of the unemployed. *Howes Bros. Co.* v. *Unemployment Compensation Commission*, 296 Mass. 275. The majority opinion denies the existence of the same power, exercised for the same purpose, merely because instead of levying a tax it provides direct relief by furnishing work to the idle. I see no essential difference between the act that was sustained in the *Howes Brothers Co.* case and the present bills in so far as they seek to substitute in public employment single women for married women whose husbands are able to support them. The only difference is a difference in the method pursued. The General Court has power over the subject matter and it also has discretionary power to select the means to be employed. The choice of the methods to be adopted is a legislative and not a judicial function. If the General Court believes it expedient to furnish relief, then we have no right to interfere on the ground that some other remedy would be more effective. *Fallbrook Irrigation District* v. *Bradley*, 164 U. S. 112, 161. *Cincinnati Soap Co.* v. *United States*, 301 U. S. 308. "The scope of judicial inquiry in deciding the question of *power* is not to be confused with the scope of legislative considerations in dealing with the matter of *policy*." *Chicago, Burlington & Quincy Railroad* v. *McGuire*, 219 U. S. 549, 569. "Times without number we have said that the legislature is primarily the judge of the necessity of such an enactment, that every possible presumption is in favor of its validity, and that though the court may hold views inconsistent with the wisdom of the law, it may not be annulled unless palpably in excess of legislative power." *Nebbia* v. *New York*, 291 U. S. 502, 537, 538. "Where legislative action is within the scope of the police power, fairly debatable questions as to its reasonableness, wisdom and propriety are not for the determination of courts, but for that of the legislative body on which rests the duty and responsibility of decision." *Standard Oil Co.* v. *Marysville*, 279 U. S. 582, 584. *South Carolina State Highway Department* v. *Barnwell Brothers, Inc.* 303 U. S.

177. This court has always observed the same limitations in determining the validity of legislative action. *Opinion of the Justices*, 163 Mass. 589, 595. *Perkins* v. *Westwood*, 226 Mass. 268, 271. *Lowell Co-operative Bank* v. *Co-operative Central Bank*, 287 Mass. 338, 343.

The bills in so far as they aim at the substitution of single women for married women whose husbands are able to support them are neither arbitrary nor capricious. There is certainly nothing inconsistent with the public welfare in requiring married women to look to their husbands for support rather than to the Commonwealth for wages. Husbands are bound by natural and statute law to support their wives, and the actual assumption of this burden by husbands is only requiring them to do what the law for centuries has prescribed. Such women have means of support independent of their wages, and there is nothing unjust or inequitable in confining them to such support until the return of normal economic conditions. They have less claim on the Commonwealth than thousands of unmarried women who must depend solely upon their own labor to secure a livelihood. The Commonwealth is not without power to assist this latter class. Laws have frequently been enacted for the sole benefit of women and minors in private employment. Constitutional rights guaranteed to women, such as freedom to contract and to sell their labor on whatever terms they desire, have been subordinated to the regulatory power of the General Court to restrict the exercise of such rights. Objections that statutes prescribing the wages, hours of labor, and other conditions of employment of women in private industry, were in violation of the Constitution of the United States on the ground that they arbitrarily discriminated against women, that they wrongfully curtailed their right to contract, that they deprived them of their property without due process of law, and that they denied them equal protection under the law, have all been finally overruled on the single ground that the courts could not say that the Legislature was palpably wrong in finding that the regulation of women in private employment was a matter related

to the public health, the public safety, the public morals and the public welfare. *Muller* v. *Oregon*, 208 U. S. 412. *West Coast Hotel Co.* v. *Parrish*, 300 U. S. 379. If the General Court can regulate private employment of women it has the power to regulate their employment in its own service, and if it determines that the public good will be enhanced by putting them to work in the place of married women whose husbands are able to support them, then we cannot pronounce such a program as one entirely lacking in any reasonable or logical relation to the public welfare. Nothing to the contrary was decided in *Lee* v. *Lynn*, 223 Mass. 109, or in *State* v. *Crane*, 214 N. Y. 154. Equal opportunity to seek and to secure public employment must yield to the extent that the public welfare demands. Restriction of personal rights is not an unusual concomitant of nearly every exercise of the police power. The right of such married women to retain their employment is not superior to the right of single women to secure such employment. But the issue is not merely a conflict between these two groups, and whatever their rights in respect to each other may be, that issue is not decisive in the present inquiry. The question is broader and more fundamental and must be viewed entirely with reference to the public interest. If the situation of our people is such that large numbers can be benefited by the substitution of single women for such married women, then the hands of the General Court are not tied by the individual or personal interests of either group. If such a change were made, it would not increase the number employed in the public service, but I cannot say that the new distribution of wages from the public treasury would not result in bettering the economic situation of a greater number of our people. This might be achieved without any increase in the public payroll. Neither can it be said that any impairment of the public service would thereby be incurred. Presumably, the new employees will take the necessary examinations to prove their competency for the employment which they seek. Anyway, these various aspects of the matter are for the General Court and not for this court.

It has been decided by this court that marriage is sufficient cause for the dismissal of teachers in the public schools. The removal of married women solely on account of their marital status is neither arbitrary nor capricious. "A decision that wise administration of public schools calls for the elimination of women teachers if they are married is not so irrational that it is inconsistent in law with good faith in dealing with a question of dismissal." *Sheldon* v. *School Committee of Hopedale,* 276 Mass. 230, 236. *Rinaldo* v. *School Committee of Revere,* 294 Mass. 167. It has also been held in England that the removal of married teachers, who had husbands capable of supporting them, in order to furnish employment for single women, was justified. *Short* v. *Poole Corp.* [1926] Ch. 66. *Fennell* v. *East Ham Corp.* [1926] Ch. 641.

A classification, made by the General Court, concerning a subject matter over which it has general power, in the general public interest is always to be upheld, unless the means employed has no rational relation to the aim and object sought. *Giozza* v. *Tiernan,* 148 U. S. 657. *Atchison, Topeka & Santa Fé Railroad* v. *Matthews,* 174 U. S. 96. *German Alliance Ins. Co.* v. *Lewis,* 233 U. S. 389. Enough has been said to show that the classification into a single group of all married women whose husbands are able to support them cannot be said to be unjustified if the General Court deems it necessary and desirable for the enhancement of the public welfare and "a distinction in legislation is not arbitrary, if any state of facts reasonably can be conceived that would sustain it." *Rast* v. *Van Deman & Lewis Co.* 240 U. S. 342, 357. *Carmichael* v. *Southern Coal & Coke Co.* 301 U. S. 495, 507. *New York Rapid Transit Corp.* v. *New York,* 303 U. S. 573, 578. Applying the established test to the facts which may be confronting the General Court, it is clear that the adoption of a policy to eliminate from public employment married women who have husbands able to support them is within the competency of the General Court. And if the classification contained but a single group which included only married women whose husbands are able to support them, it would not be invalid simply

because the General Court has not covered the entire field. It may begin where it deems it most advantageous to the public good. *Massachusetts General Hospital* v. *Belmont*, 233 Mass. 190, 203. *Magoun* v. *Illinois Trust & Savings Bank*, 170 U. S. 283, 293. *United States* v. *Carolene Products Co.* 304 U. S. 144, 151.

In view of what has been said, the following answers, in the opinion of the undersigned, should be made:

If all married women are to be excluded, the answers to question 3, subdivisions (a), (b), (c) and (d) are "Yes." If only married women whose husbands are able to support them are to be excluded, the answers to question 3, subdivisions (a), (b), (c) and (d) are "No."

The answer to question 4 is "No."

The answer to question 5 is "No."

The answer to question 6 is "Yes."

The answer to question 7 is "No" as to House Bill 893; "Yes" as to House Bills 1408 and 1705.

The answer to question 8 is "Yes."

The answer to question 9 is "Yes."

The answer to question 10 is "Yes."

The answer to question 11 is marriage is not an adequate cause either for barring married women from entering the public employment or for their removal therefrom, except in instances where their husbands are able to support them.

In view of these answers, no answers appear to be required to the other questions.

JAMES J. RONAN.